In the Matter of the MARRIAGE OF Shannon Waynette EDWARDS and Alan Randall Edwards, and in the Interest of Casey Alan Edwards and Brittany Nicole Edwards, Minor Children.

No. 06–00–00130–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 12, 2002.

Decided April 11, 2002.

Holly G. Crampton, Crampton & Crampton, Wichita Falls, Joseph D. Libby, Dyer & Libby, Houston, for appellant.

Paul Hoover, Paul D. Hoover & Associates, Texarkana, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Shannon Edwards appeals the trial court's judgment granting her divorce from Alan Edwards and naming Alan the sole managing conservator of their son, Casey, age seven, and their daughter, Brittany, age six. Shannon filed a petition for divorce requesting the trial court to make certain temporary orders, requesting she be appointed sole managing conservator, alleging Alan engaged in domestic violence against her, and requesting a protective order.

The trial court issued an ex parte protective order, *see* TEX. FAM.CODE. ANN. §§ 83.001–83.007 (Vernon Supp.2002), and ordered Alan to appear for a hearing on whether it should issue a protective order. After that hearing, the trial court signed an agreed order regarding temporary possession of and access to the children and the preservation of the community estate, and enjoining each party from threatening, harassing, or physically abusing the other party or the children. The trial court signed a similar agreed order after another hearing conducted about a week later.

About three months later, the trial court conducted the final divorce hearing at a bench trial. The trial court named Alan sole managing conservator and named Shannon possessory conservator. The trial court also named a receiver to liquidate the community estate and pay the community debts. Finally, the trial court granted Shannon's request for a permanent injunction and a protective order. These orders were incorporated into the final divorce decree, which the trial court signed about seven months after trial.

At Shannon's request, the trial court issued Findings of Fact and Conclusions of Law. The trial court's specific findings of fact were as follows:

1. Petitioner and Respondent were married on or about December 15, 1990 and separated on or about June 3, 1999.

2. Prior to filing the action for divorce, Petitioner had been a resident of Bowie County, Texas for a period in excess of one (1) year.

3. Two (2) children were born of the marriage.

. . . .

4. The parties accumulated certain property during their marriage, and had other property prior to their marriage.

5. The parties accumulated certain debts during their marriage.

Among the trial court's conclusions of law were the following:

3. Respondent is named Sole Managing Conservator of the parties [sic] minor children and Petitioner is named Possessory Conservator, subject to standard visitation. Such disposition is in the best interest of the children.

4. Petitioner is to pay child support in the amount of $50.00 per week, and to purchase and maintain health insurance on the minor children.

. . . .

7. The remainder of the community property together with the community real property . . . [is] to be delivered by the parties to [the receiver appointed by the court].

8. The Receiver shall offer and sell such property to the highest bidder at auction; the proceeds, after expenses, shall be applied to the community debt herein. Any excess funds remaining shall be divided equally between the parties.

Shannon made a timely Request for Additional or Amended Findings of Fact and Conclusions of Law. The trial court denied her request. Shannon also filed a Motion for New Trial, which was overruled by operation of law.

On appeal, Shannon raises sixteen issues in which she challenges (1) the trial court's Findings of Fact and Conclusions of Law, (2) the trial court's naming of Alan as sole managing conservator, (3) the trial court's appointment of a receiver, (4) the trial court's inclusion of the protective order in the divorce decree, and (5) the trial court's failure to grant her Motion for New Trial.

Because most of Shannon's issues on appeal revolve around the adequacy of the trial court's Findings of Fact and Conclu-

sions of Law, we begin with an outline of the law governing the issuance and review of a trial court's findings. In any case tried without a jury in a district court, any party may request the trial court to state in writing its findings of fact and conclusions of law. Tex.R. Civ. P. 296. The trial court must file its findings of fact and conclusions of law within twenty days after a timely request is filed. Tex.R. Civ. P. 297. After the trial court files original findings of fact and conclusions of law, any party may file a request for specified additional or amended findings or conclusions. Tex.R. Civ. P. 298. The trial court must file any appropriate additional or amended findings and conclusions within ten days after such request is filed. *Id.*

No findings or conclusions shall be deemed or presumed by any failure of the trial court to make any additional findings or conclusions. *Id.* "When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein." Tex.R. Civ. P. 299. On appeal, the judgment may not be supported by a presumed finding on any ground of recovery or defense, no element of which has been included in the findings of fact. *Id.* But when the trial court has found one or more elements of a ground of recovery or defense, a court of appeals must presume omitted, unrequested elements in support of the judgment. *Id.*

■ As a general rule, the trial court's duty to file findings of fact and conclusions of law after a bench trial is mandatory. *Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 772 (Tex.1989). However, the trial court need only enter findings, or additional findings, on ultimate or controlling issues, rather than on mere evidentiary issues. *See Lifshutz v. Lifshutz,* 61 S.W.3d 511, 515 (Tex.App.-San Antonio 2001, pet. denied); *Hill v. Hill,*

971 S.W.2d 153, 155 (Tex.App.-Amarillo 1998, no pet.); *Gutierrez v. Gutierrez*, 791 S.W.2d 659, 667 (Tex.App.-San Antonio 1990, no writ). The trial court is also not required to make additional findings that are unsupported in the record or that are contrary to other previous findings. *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 838 (Tex.App.-Texarkana 1996, writ denied).

An ultimate fact issue is one that is essential to the cause of action and seeks a fact that would have a direct effect on the judgment. *Clear Lake City Water Auth. v. Winograd*, 695 S.W.2d 632, 639 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.). In contrast, an evidentiary issue is one the trial court may consider in deciding the controlling issue, but is not a controlling issue itself. *See id.*

When a party makes a proper and timely request for findings and the trial court fails to comply, harm to the complaining party is presumed unless the contrary appears on the face of the record. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). Error is harmful if it prevents an appellant from properly presenting a case on appeal. *Id.* Harm often occurs in factually complicated cases in which there are two or more possible grounds for recovery or defense. *See Fraser v. Goldberg*, 552 S.W.2d 592, 594 (Tex.Civ.App.-Beaumont 1977, writ ref'd n.r.e.). Harm occurs when the testimonies of two witnesses were in conflict on material issues of fact and would support different conclusions of law. *See Kermit Wholesale Lumber Co. v. Stanfield*, 373 S.W.2d 365, 366 (Tex.Civ.App.-Eastland 1963, no writ).

### Receivership

Shannon contends the trial court erred in failing and refusing to provide any findings of fact regarding its order of a receivership and that such failure deprived her of findings of fact necessary to prepare an appeal of the order. She also contends the trial court abused its discretion in ordering the appointment of a receiver to dispose of the community property and pay the community debts.

The record shows neither party pleaded for the appointment of a receiver. The record also reveals the following discussions:

THE COURT: What property? Is there any issue on separate property?

[Plaintiff's Attorney]: Yes, sir, there is.

[Defendant's Attorney]: No, no, not really. We had kind of always agreed—there's a mobile home and ten acres, a mobile home on five, and the other five, we've kind of always agreed that the other five should be Mrs. Edwards' separate property.

THE COURT: You understand that I will order all [community] property sold, all debts paid, and whatever is left over will be divided equally?

[Defendant's Attorney]: I've always understood that.

[Plaintiff's Attorney]: Yes, sir.

THE COURT: And if the parties—Of course, they lose on that kind of a deal, but I went to that system when I started trying to divide five tea glasses and seven sheets.

. . . .

[Plaintiff's Attorney on direct examination of Shannon]: Now, Mrs. Edwards, you have made a list—Have you made a list of the community property that you and Mr. Edwards had acquired during the marriage?

A. Yes. ma'am.

[Defendant's Attorney]: Your Honor, given the Court's prior ruling, I don't see what the necessity of going into the

community property is. I understand that the Court's order is going to be that it's to be disposed of, pending no agreement.

THE COURT: That will be the order.

. . . .

THE COURT: You know, we invariably get into a big argument about what someone kept or hid or didn't turn in or that type of thing, and I don't want to face that in this case.

[Defendant's Attorney]: Do you want us to submit a written supplement [of the specific community property], Judge, if it's not in there?

THE COURT: Yes. Because what I intend to be sold is everything except their underwear.

 Tex. Fam.Code Ann. § 7.001 (Vernon 1998) gives the trial court broad authority to divide the marital estate in a manner it deems just and right. That authority sometimes includes the power to appoint a receiver. *Rusk v. Rusk*, 5 S.W.3d 299, 306 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). The appointment of a receiver is left to the trial court's sound discretion. *Id.* at 307.

 Receivership is an extraordinarily harsh remedy and one that courts are particularly loathe to utilize. *Id.* at 306. "In recognition of the fact that appointment of a receiver without notice is one of the most drastic actions known to law or equity and should be exercised with extreme caution and only where great emergency or imperative necessity requires it, our courts have uniformly been reluctant to grant such harsh relief." *Id.* (quoting *Indep. Am. Sav. Ass'n v. Preston 117 Joint Venture*, 753 S.W.2d 749, 750 (Tex.App.-Dallas 1988, no writ)). Judicial seizure and court management of any asset should be a last resort. *Id.*

 The Texas Supreme Court has held that in making a just and right division, the trial court should first decide whether the community estate is subject to partition in kind. *Hailey v. Hailey*, 160 Tex. 372, 331 S.W.2d 299, 303 (1960). In determining if property is subject to partition in kind, the trial court should consider the nature and type of property involved and the relative conditions, circumstances, capabilities, and experience of the parties. *Walston v. Walston*, 971 S.W.2d 687, 693 (Tex.App.-Waco 1998, pet. denied). If the property is subject to partition in kind, the trial court should make an equitable division of the community estate. *Id.* at 692. If it is not, the trial court may appoint a receiver and order so much of the property as is incapable of partition to be sold and the proceeds divided between the parties in what the trial court views as a just and fair distribution. *Id.*

In the present case, the trial court's findings are inadequate because they do not address whether any or all of the community property is subject to partition in kind. The findings do not even contain a list of the community assets and debts. Therefore, the trial court's findings do not provide a factual foundation for its conclusion a receiver should be appointed.

It appears from the record before this court the trial court's practice is to appoint a receiver when the parties cannot reach an agreement on the division of property. Such a practice constitutes an abuse of discretion insofar as it does not follow the principles the Texas Supreme Court set out in *Hailey*, i.e., determine what can be partitioned in kind between the parties and, if necessary to achieve a just and right division, appoint a receiver to dispose of the remainder.

 At oral argument, Alan's attorney contended the trial court's procedure was not an abuse of discretion because the

parties are offered the opportunity to purchase the property before the receiver sells it. Counsel's assertion is unsupported in the record before this court.

However, even if counsel is correct, the trial court's procedure puts the parties in a worse position than they would have otherwise been had the trial court distributed their property as part of an in-kind division. If a party chooses to purchase property from the receiver, he or she will have to expend separate property to do so. The money earned from the sale would then be distributed in part to the other party either in cash or as a means of paying the community debt. The effect is a partition, with the party who purchases the property reimbursing the other party for his or her interest.

But each party's interest in the community estate is reduced proportionately by their share of the receiver costs. Further, even if the parties can purchase the community property from the receiver, the party with greater liquidity has greater flexibility in retaining property he or she might otherwise lose as part of an in-kind division and distribution.

Nevertheless, in the present case, the issue is moot. The record contains a partial list of the community assets and debts (though the trial court's findings do not). The record also contains receipts for the sale of some of the community property and distribution checks to various creditors of the estate. The record further indicates the trial court made a final order of disbursement, though it is not clear whether the record contains a copy of that order. At oral argument, the parties confirmed the receiver had made a final distribution of all community assets.

 For a plaintiff to have standing, a controversy must exist between the parties at every stage of the legal proceedings, including the appeal. *Williams v.* *Lara,* 52 S.W.3d 171, 184 (Tex.2001). If a controversy ceases to exist, i.e., the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome, the case becomes moot. *Id.* If the case becomes moot, the parties lose standing to maintain their claims. *Id.*

 There is an exception to the mootness doctrine for conduct that is of such short duration the appellant cannot obtain review before the issue becomes moot. *Tex. Dep't of Pub. Safety v. La-Fleur,* 32 S.W.3d 911, 913–14 (Tex.App.-Texarkana 2000, no pet.). This exception is referred to as "capable of repetition, yet evading review." *Id.* at 914. To invoke the exception, a plaintiff must prove: (1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again. *Williams,* 52 S.W.3d at 184.

This case is not susceptible to the application of the "capable of repetition, yet evading review" exception to the mootness doctrine. Because the property has been sold, the proceeds distributed, and neither party contends the division of property was unfair, there is no present controversy, and Shannon will not be subject to the same action again. Further, Shannon could have protected her interest by requesting a stay of the order appointing a receiver pending review on appeal. We overrule Shannon's contentions regarding the receivership.

## Protective Order

 Shannon next contends the trial court erred in failing and refusing to provide Findings of Fact and Conclusions of Law concerning the granting of her application for a protective order. The trial court's Findings of Fact and Conclu-

sions of Law do not address the protective order it orally granted at the end of trial and incorporated in the divorce decree. The trial court overruled Shannon's Request for Additional or Amended Findings of Fact and Conclusions of Law, in which she requested a finding of fact that Alan "engaged in at least one episode of family violence during the marriage" and a conclusion of law that Shannon is entitled to a permanent protective order and permanent injunction because of Alan's conduct during the marriage.

As mentioned previously, the trial court's findings of fact form the basis of the judgment on all grounds of recovery. TEX.R. CIV. P. 299. On appeal, the judgment may not be supported by a presumed finding on any ground of recovery, no element of which has been included in the findings of fact. *Id.* It follows from this that there are no findings of fact in the record to support the Protective Order, which the trial court is required to issue if it finds family violence has occurred and is likely to occur in the future. *See* TEX. FAM.CODE ANN. § 85.001(b) (Vernon Supp. 2002).

Nevertheless, Shannon was not deprived of an opportunity to present her case on appeal because she prevailed in the trial court. Alan, who is the adverse party with respect to the Protective Order, has not appealed from its issuance. We overrule Shannon's contention regarding the sufficiency of the Findings of Fact and Conclusions of Law on the Protective Order.

 Shannon also contends the Protective Order incorporated in the divorce decree is unenforceable because it does not comply with the Texas Family Code. Section 85.004 of the Family Code requires a protective order in a suit for dissolution of marriage be in a separate document entitled "PROTECTIVE ORDER." TEX. FAM. CODE ANN. § 85.004 (Vernon Supp.2002).

Shannon does not cite any authority for her theory that incorporating the Protective Order in the divorce decree renders it unenforceable, and our research reveals no such authority either in caselaw or in the Texas Family Code. Such a harsh outcome is inconsistent with the Legislature's intent of preventing family violence. Nevertheless, the trial court clearly intended to grant Shannon a protective order. We therefore sustain her contention regarding the necessity for a protective order issued in conformance with Section 85.004.

## Conservatorship

 Shannon next contends the trial court erred in failing and refusing to provide findings of fact concerning the conservatorship of the children. She also contends the trial court abused its discretion in naming Alan as sole managing conservator of the children. Specifically, she contends that the trial court failed to give sufficient weight to evidence of Alan's violence against Shannon, that the trial court in effect granted custody to Alan's parents, and that there is insufficient evidence to support the trial court's conclusion of law that states naming Alan as sole managing conservator is in the best interests of the children.

 The best interest of the child is the primary consideration in determining conservatorship and possession of and access to the child. TEX. FAM.CODE ANN. § 153.002 (Vernon 1996). A trial court has wide discretion in determining the best interest of a child in family law matters such as custody, visitation, and possession. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982). We reverse the trial court's judgment only when it appears from the record as a whole the trial court abused its discretion. *Id.*

In determining whether to appoint a party as a sole or joint managing conservator, a trial court must consider evidence of the intentional use of abusive physical force by the party against the party's spouse, a parent of the child, or any person younger than eighteen years of age committed within the two years preceding the filing of or during the pendency of the suit for divorce. TEX. FAM.CODE ANN. § 153.004(a) (Vernon Supp.2002). The trial court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child. TEX. FAM.CODE ANN. § 153.004(b) (Vernon Supp. 2002).

The Texas Family Code establishes a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child, or as the conservator who has the exclusive right to determine the primary residence of a child, is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child. *Id.* In addition, the Family Code establishes a rebuttable presumption that the appointment of the parents as joint managing conservators is in the best interest of the child, but a finding of a history of family violence involving the parents removes the presumption. TEX. FAM.CODE ANN. § 153.131(b) (Vernon Supp. 2002).

In the present case, one of the trial court's conclusions of law states that appointing Alan as sole managing conservator and Shannon as possessory conservator is in the best interests of the children. As mentioned previously, the trial court need only enter findings of fact, or additional findings of fact, on ultimate or controlling issues, rather than on mere evidentiary issues. An ultimate fact issue is one that is essential to the cause of action and seeks a fact that would have a direct effect on the judgment. *Winograd,* 695 S.W.2d. at 639. In contrast, an evidentiary issue is one the trial court may consider in deciding the controlling issue, but is not a controlling issue itself. *See id.*

Here the trial court's findings of fact do not contain any facts on which the ultimate issue of the best interests of the children could be predicated. Therefore, the trial court erred. Such error is harmful if it prevents an appellant from properly presenting a case on appeal. *Tenery,* 932 S.W.2d at 30. Harm occurs when the testimonies of two witnesses were in conflict on material issues of fact and would support different conclusions of law. *See Stanfield,* 373 S.W.2d at 366.

The testimony is conflicting on the issue of domestic abuse. Shannon testified Alan was "physically violent" with her in front of the children at times before their separation, but did not elaborate on the specifics of those incidents. She did testify about the specifics of an incident that occurred at the time of her separation from Alan. She testified she was attempting to leave with Brittany in her arms when Alan and his sister took Brittany from her. She testified she was "hit by someone," but did not know who hit her. She also testified Alan bit her on her hand so she would release Brittany. She admitted, however, she never called the police or filed a police report regarding any of these alleged domestic violence incidents.

Alan denied ever physically abusing Shannon, either during their marriage or when they separated. Alan's mother, Jewell Edwards, who was also present during the alleged incident when Shannon and Alan separated, testified she did not see

anyone hit Shannon. Rather, she testified Shannon hit Alan and threw rocks at him.

This issue is material to the appeal because if the trial court believed Shannon that Alan engaged in a history or pattern of physical abuse against her during their marriage, there would need to be other evidence, and other findings, rebutting the Family Code's presumption that appointing someone who engaged in a history or pattern of physical abuse as sole managing conservator is not in the best interests of the children.

■ Shannon also contends the trial court's conclusion of law—that appointing Alan as sole managing conservator and Shannon as possessory conservator is in the best interests of the children—is not supported by the evidence. We review a trial court's conclusions of law de novo as questions of law, examining the legal conclusions drawn from the facts to determine their correctness. *Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist.,* 981 S.W.2d 483, 485 (Tex.App.-Austin 1998, no pet.). Because there are no findings of fact, we are in no position to evaluate the trial court's legal conclusions without presuming facts in support of the judgment, which Rule 299 prohibits. *See* Tex.R. Civ. P. 299. We sustain Shannon's issue regarding the trial court's findings on the conservatorship of the children.

■ Shannon also contends the trial court awarded de facto custody to Alan's parents. As mentioned previously, in its third conclusion of law, the trial court stated that appointing Alan as sole managing conservator and Shannon as possessory conservator is in the best interests of the children. The judgment is consistent with that conclusion.

■ As for Shannon's contention the trial court awarded de facto custody to Alan's parents, the record is clear that, no matter which parent was awarded custody, the grandparents would play a large role in caring for the children. A trial court does not err in considering the role grandparents or other family members will play in a child's life in determining the best interest of the child. *See, e.g., Johnson v. Johnson,* 536 S.W.2d 620, 621 (Tex.Civ. App.-Tyler 1976, no writ) (appointing father managing conservator was not an abuse of discretion where grandparents lived in the same town as father and grandchildren, had a good relationship with grandchildren, and were readily available as babysitters). We overrule Shannon's contention.

### Health Insurance

■ Shannon next contends the trial court's fourth conclusion of law—that Shannon is ordered to purchase and maintain health insurance for the children—is contrary to the trial court's oral pronouncement at the end of trial and the written divorce decree. At the end of trial, the trial court stated, "I'm going to require that Mrs. Edwards pay child support based on the chart, but I'm also going to require that [Alan] continue to pay the insurance and dental insurance on these kids." The divorce decree recites, "IT IS THEREFORE ORDERED that, ALAN RANDALL EDWARDS shall provide medical support for the parties' children, for as long as child support is payable under the terms of this order, as set out herein." The divorce decree goes on to specify the terms by which Alan is to provide medical insurance. Yet, in its conclusions of law, the trial court recites, "[Shannon] is to pay child support in the amount of $50.00 per week, and to purchase and maintain health insurance on the minor children."

■ Findings of fact and conclusions of law filed after a judgment are

controlling if there is any conflict between them. *City of Laredo v. R. Vela Exxon, Inc.*, 966 S.W.2d 673, 678 (Tex.App.-San Antonio 1998, pet. denied). When an appellate court is presented with a conflict between a judgment and subsequent findings and conclusions, the appellate court has the power to modify the judgment to conform with the findings of fact and conclusions of law. *Id.* However, if there is no evidence in the record to support the subsequent finding, we are not required to modify the judgment to reflect that finding. *Id.*

We are not confronted here with a finding of fact inconsistent with the judgment; rather, we are confronted by a conclusion of law inconsistent with the judgment. In most of the cases we could find in which the judgment was inconsistent with the findings of fact and conclusions of law, it was the findings of fact, rather than the conclusions of law, that were inconsistent with the judgment. *See, e.g., id.; Cole v. Cole*, 880 S.W.2d 477, 483 (Tex.App.-Fort Worth 1994, no writ); *Arena v. Arena*, 822 S.W.2d 645, 652 (Tex.App.-Fort Worth 1991, no writ); *Law v. Law*, 517 S.W.2d 379, 383 (Tex.Civ.App.-Austin 1974, writ dism'd). In those cases in which a conclusion of law was inconsistent with the judgment, the court of appeals disregarded the conclusion of law. *See Kershner v. State Bar of Tex.*, 879 S.W.2d 343, 348 (Tex. App.-Houston [14th Dist.] 1994, writ denied); *Mercedes Dusting Serv., Inc. v. Evans*, 353 S.W.2d 894, 896 (Tex.Civ.App.-San Antonio 1962, no writ).

 This result follows logically from Rule 299, which makes findings of fact the basis of the judgment on all grounds of recovery or defense. *See* Tex.R. Civ. P. 299. The principle function of conclusions of law is to indicate to the appellate court the theory on which the case was tried. 6 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 18:3[a] (2d ed.1998). We overrule Shannon's contention.

### Separate Property

Shannon next contends the trial court's fifth and sixth conclusions of law do not accurately reflect the classification and division of separate property stated in the judgment. This issue is improperly briefed. Tex.R.App. P. 38.1(h). Shannon has not pointed out the purported inaccuracy, and we observe that the classification of property in the conclusions of law is substantially the same as those in the judgment. In any event, as we have already said, when there is a conflict between conclusions of law and the judgment, the judgment controls. We overrule Shannon's contention.

### Motion for New Trial

 Shannon next contends the trial court erred in overruling her Motion for New Trial. In her motion, Shannon contended that Alan denied her the visitation to which she was entitled under the standard custody order, that events surrounding the couple's son, Casey, demonstrated Alan should not have been named as sole managing conservator, and that events after the final divorce hearing demonstrated Alan's parents had de facto custody of the children.

At the hearing on the Motion for New Trial, Alan admitted he had frequently failed to make the children available for Shannon's visitation. He acknowledged the Protective Order prevented him from restricting her access to the children. He testified he kept the children away from Shannon in part because she moved over 100 miles away to Sherman, Texas, and began living with a man he did not believe was of good character. However, both Shannon's attorney and Alan acknowl-

edged the couple had agreed Shannon could have possession of the children on weekends.

Shannon also introduced pictures of Casey's leg, which purportedly had a bruise on it, and asked Alan whether he caused the bruise with a belt. Alan denied causing the bruise.

There was also testimony Casey had been having difficulty adjusting to the divorce. Shannon introduced Casey's grades, which showed a precipitous drop around the time of the final divorce hearing. His grades had risen in the periods after the final divorce hearing, but in some cases were lower than they were before the final divorce hearing.

Alan, Jewell Edwards, Shannon, and Shannon's mother all testified Casey began twisting his hair and pulling it out. However, Shannon and her mother also testified the situation had gotten better. Alan admitted he told Shannon that Casey had hit another boy with a baseball bat at a Little League game. Alan later testified he had been misinformed and the incident was not as serious as he first believed. Alan also testified he initiated counseling for Casey, but later withdrew him because the counselor was not meeting with Casey for the full scheduled hour.

Regarding Alan's parents' involvement in the children's lives, Jewell Edwards testified she and her husband helped Alan by feeding the children and getting them to school. She also testified she and her husband took the children on extended trips during their summer vacation from school.

In opposition to Shannon's motion, Alan testified Shannon quit her job at Wal-Mart almost immediately after the final divorce hearing. He testified she did not begin making court-ordered child support payments until about nine months later.

Shannon testified she moved to Sherman shortly after the final divorce hearing and began living with a man there. She testified they are engaged to be married as soon as her divorce is final. She also testified she and her fiancé plan to move back to Texarkana, where he had recently been transferred.

■ The trial court has wide discretion in ruling on a motion for new trial, and its action will not be disturbed on appeal absent a showing of an abuse of discretion. *McGuire v. Kelley,* 41 S.W.3d 679, 683 (Tex.App.-Texarkana 2001, no pet.). There was evidence Alan prevented Shannon from exercising her court-ordered visitation. However, there was also evidence the couple had recently agreed to allow Shannon to have the children on weekends, rather than every other weekend as the standard custody agreement provides. Similarly, with regard to Casey's behavior, the evidence shows he had adjustment problems (e.g., lower grades, pulling his hair out), but the trial court could have rationally concluded based on the evidence the situation was stabilizing.

■ There was also evidence Casey sustained a bruise on his leg. However, as trier of fact, it is the province of the trial court to determine the credibility of the witnesses and the weight to be given their testimony, to believe or disbelieve all or any part of the testimony, and to resolve any inconsistencies in the testimony. *Lifshutz,* 61 S.W.3d at 515. Therefore, the trial court was free to believe Alan's testimony that he did not cause the bruise on Casey's leg. The trial court could also have rationally concluded Alan's parents were playing no greater role in the children's lives than the trial court envisioned when it named Alan as sole managing conservator.

In addition, there was evidence Shannon moved away from the children almost immediately after the final divorce hearing to live with another man. There was also evidence Shannon failed to timely make her court-ordered child support payments. Under these facts, there was no abuse of discretion. We overrule Shannon's contention regarding the Motion for New Trial.

### Conclusion

We sever the portion of the divorce decree regarding conservatorship, abate this severed portion, and remand to the trial court for additional findings of fact on the issue of the best interests of the children in accordance with this opinion. The trial court is ordered to enter its additional findings and forward a supplemental clerk's record containing those findings to this court within thirty days of the date of this opinion. Shannon may file an amended brief related to issues one, two, three, and five of her brief within twenty days of the date the trial court files its additional findings of fact. Alan may file a responsive brief within ten days of the last day on which Shannon may file her amended brief.

We also sever the portion of the divorce decree regarding the Protective Order, the judgment as to that issue is reversed, and the cause is remanded to the trial court for issuance of a protective order in conformance with Section 85.004 of the Texas Family Code.

We overrule the remainder of Shannon's issues on appeal and affirm the trial court's judgment with respect to those issues only.