**Opinion filed August 13, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00356-CV

_____

## IN THE INTEREST OF D.G.G., A CHILD

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 39,230-C**

### M E M O R A N D U M   O P I N I O N

This is a child custody dispute. The trial court appointed appellant and appellee joint managing conservators of their son, D.G.G., and granted appellee the exclusive right to designate D.G.G.'s primary residence within Taylor County. Appellant challenges this ruling. We affirm.

*Background Facts*

Appellant and appellee had been married for about nine years when appellant filed suit for divorce. They had two boys together, and appellant was their primary caretaker. While the suit for divorce was pending, their youngest child, B.I.G., contracted a fatal lung infection and died. Questions were raised concerning appellant's parenting. B.I.G. had complained of a stomach ache for approximately a week before his death, but a thorough CPS investigation determined that appellant did not act negligently.

*Issues on Appeal*

Appellant raises two issues on appeal. First, she complains that the trial court abused its discretion because giving appellee the exclusive right to designate D.G.G.'s primary residence was not in the child's best interest. Second, she contends that the trial court abused its discretion by overruling her motions to reopen evidence, for a new trial, to stay judgment pending appeal, and for temporary orders.

*Exclusive Right to Designate Child's Primary Residence*

Review of the trial court's decision giving appellee the right to determine D.G.G.'s primary residence is limited to whether the trial court abused its discretion. *Turner v. Turner*, 47 S.W.3d 761, 763 (Tex. App.—Houston [1st Dist.] 2001, no pet.). The trial court is given wide latitude in deciding custody issues. *Peña v. Peña*, 8 S.W.3d 639 (Tex. 1999); *Turner*, 47 S.W.3d 761, 763. A trial court's decision can only be set aside if it acted in an arbitrary and unreasonable manner or acted without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

The best interest of the child is always the overriding principle in any suit affecting the parent-child relationship. TEX. FAM. CODE ANN. § 153.002 (Vernon 2008); *Allen v. Mancini*, 170 S.W.3d 167 (Tex. App.—Eastland 2005, pet. denied). The Texas Supreme Court has identified a non-exhaustive list of factors that trial courts should consider in making a best-interest determination. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (listed factors include: stability of the home or proposed placement, parental abilities of the individuals seeking custody, and acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one); *see also* TEX. FAM. CODE ANN. § 153.134 (Vernon 2008) (identifying best-interest factors to consider when designating which conservator has the exclusive right to determine the child's primary residence).

Appellant argues that the trial court abused its discretion because appellee had a historic pattern of putting his wants ahead of his child's needs and because appellant had been D.G.G.'s primary caretaker. Appellant asserted appellee's inappropriate priorities were evidenced by his extramarital affairs. Appellee admitted to having two affairs but denied a third. Appellant also pointed to appellee's financial decisions. Appellee drove a well-equipped 2001 Dodge Ram Sport

while she drove the family in a 1992 Ford Explorer that was in constant need of repair. Appellee had a racing-style motorcycle that he had rebuilt twice and had purchased and spent money on two project cars only to sell them at a loss later. She also feared that appellee would be deployed and be unable to take care of D.G.G. Appellee is in the Air Force and had been deployed twice for four to six months in the three years prior to trial.

Appellee used pictures of the house to demonstrate appellant's messy housekeeping. Appellee questioned appellant's parenting skills and her ability to be a good role model by introducing evidence of several lies that appellant circulated to friends. Appellant lied about having a baby girl die in a fire. She lied about having a baby girl die from cancer. Appellant's friend, Jaqueline Andrews, testified that she even emailed appellee and suggested that appellant needed counseling to help with her lying. Testimony by neighbors indicated that D.G.G. often played outside while appellant stayed home with the door shut. Appellee also presented evidence of two medical emergencies that appellant arguably mismanaged. Appellant delayed in taking D.G.G. to the doctor after he broke his arm, even though the doctor's visit would have been free since appellee was in the military, because she believed it was a sprain. B.I.G. suffered for an extended period of time before he died from an acute lung infection. D.G.G. told CPS that he did not know how long B.I.G. had complained of a stomach ache, but he knew B.I.G. had woken up in the middle of the night crying because of the pain. Finally, the trial court had evidence that appellant had a daughter from a prior marriage but had only a minimum relationship with this child.

Appellant does not persuade us that the trial court ignored the best-interest standard and acted unreasonably when it chose appellee as the parent to designate D.G.G.'s primary residence. The trial court was presented with conflicting testimony concerning the parties' parenting abilities. Both parties introduced testimony that they were good parents, and both attacked the parenting skills of the other. Because the trial court determines the credibility of the testimony, we will not second-guess its judgment. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.—Tyler 2007, pet. denied) (the factfinder is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary). Based on the record, it was not unreasonable for the trial court to find that granting appellee the exclusive right to designate the primary residence was in D.G.G.'s best interest. Appellant's first issue is overruled.

3

*Motion for New Trial*

The trial court's decision not to grant appellant's posttrial motions is reviewed for an abuse of discretion. *In re Marriage of Edwards*, 79 S.W.3d 88, 102 (Tex. App.—Texarkana 2002, no pet.). Generally, if some evidence supports the trial court's decision, then it did not act unreasonably. *Id*. On review, every reasonable presumption will be made in favor of the trial court. *Id*. No abuse of discretion is shown unless the evidence presented in support of the motion and not offered at the original trial strongly shows that the original custody order would have a seriously adverse effect on the interest and welfare of the child and that presentation of this evidence at another trial would probably change the result. *C. v. C.*, 534 S.W.2d 359, 361 (Tex. Civ. App.—Dallas 1976, writ dism'd).

Appellant filed a motion to reopen evidence and a motion for new trial based on events that occurred in the final days of the divorce hearing. Appellee took D.G.G. to play with a friend. This friend was D.G.G.'s age (D.G.G. was eight years old at the time of trial), and D.G.G. had played with him the previous summer. Appellee left the boys unattended while he took a phone call. When he returned, appellee found the boys coming out of a closet where they had kissed each other's privates. Appellant claims that appellee was irresponsible for leaving the boys together because he had been told the day before that the playmate "acted out" on a four-year-old child. Appellant alleges appellee knew "acted out" meant sexual molestation. Appellant also contends that appellee handled the situation poorly by yelling at the boys and scaring D.G.G.

Appellant acknowledges that she knew of the incident prior to learning of the trial court's ruling but contends that she did not bring it to the trial court's attention on the advice of counsel. The trial court advised the parties of its ruling by letter, and appellant retained new counsel and filed her posttrial motions. The trial court conducted an evidentiary hearing and then denied appellant's motions.

The trial court did not abuse its discretion. The trial court could reasonably conclude that this incident did not compromise its judgment that it was in D.G.G.'s best interest to have appellee designate his primary residence. D.G.G. had played with this friend without incident the previous summer while in appellant's custody, appellee watched them play the day before, and he noticed nothing inappropriate this day. Appellee's decision to take a phone call and to leave the boys

unattended could be characterized as no more than a brief oversight. Moreover, the evidence indicates that appellee responded appropriately. He notified appellant immediately and contacted CPS, and D.G.G. and appellee went to four or five counseling sessions beginning the next day. This same counselor had begun these sessions with D.G.G. before he testified at trial that both appellant and appellee were good parents. Appellant argues in her brief that the incident would change this therapist's opinion of appellee's parenting skills, but appellant offered no evidence at the posttrial hearing of how this was possible. The trial court had wide latitude in deciding whether appellant's motions were well-founded. The trial court did not act in an arbitrary manner and did not abuse its discretion. Appellant's second issue is overruled.

*Conclusion*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


August 13, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

5