**AFFIRMED; Opinion Filed November 1, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-01435-CV

**RAMER CONCRETE, INC., Appellant**
**V.**
**JUAN CARDONA, Appellee**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-16-00560-C**

## MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Evans

This is a work-related personal injury case involving a workers' compensation non-subscriber. After a bench trial, Ramer Concrete, Inc. appeals from an adverse judgment on negligence claims brought by former employee Juan Cardona. In two issues, Ramer generally complains about the trial court's failure to file findings of fact and conclusions of law and challenges the legal sufficiency of the evidence supporting the trial court's judgment. Cardona has not filed a brief in this appeal. For the reasons set forth below, we affirm the trial court's judgment.

## BACKGROUND

It is undisputed that Cardona has worked as a concrete laborer for Ramer on and off since 1997. The parties stipulated that he was an employee of Ramer on March 11, 2014, the day of the

accident. The accident occurred during a construction project on which Ramer was the subcontractor hired to pour concrete. Ramer, in turn, had contracted with Gene's Construction to provide the concrete pumping equipment for the job. While two employees from Gene's Construction operated the pump, Ramer employees poured the concrete using the hoses provided by Gene's Construction.

The accident occurred during the clean-up phase of the project, when pressure is sent through the hose to clean out the cement. Cardona stated he was injured when the hose he and two other Ramer employees were holding down under a piece of plywood, kicked up and struck Cardona on his right hand, throwing his right arm such that the palm of his hand went up past his ear. Cardona immediately felt pain in his right hand, where the thumb joins the palm, as well as pain in his right arm and right shoulder. He also felt pain in his neck that day. Cardona testified that his supervisor, Ray Lopez, was not present when the accident occurred.

Cardona testified that in all his previous jobs with Ramer, he was always involved in helping clean out the hose. According to Cardona, when they cleaned out the hose in the past, there were always six to eight people holding the hose down. Cardona opined the accident on March 11 occurred because there were only three people holding the hose that day. Cardona testified that Florentino Martinez was one of the two people helping him hold down the hose. Martinez contradicted Cardona's testimony, however, testifying that although he worked at the job site on the day Cardona was injured, he was not present when Cardona was injured.[1] Martinez stated he had gone to the truck and when he returned, Cardona and another person had cement on their faces and bodies.

Although he finished his shift the day of the accident, Cardona had a lot of pain. Cardona testified that as the day went on, the pain got worse. Cardona had a lot of difficulty doing anything

---

[1] Martinez was still employed by Ramer at the time he testified.

with his shoulder, hand, and arm because of the pain. The day after the accident, Cardona went to work. When Lopez saw his swollen hand, he directed him to get checked out at a specified medical clinic. The following day, Cardona presented to the clinic with complaints about his right hand and arm. He reported that his arm hurt a lot when it was raised and he could not use his hand or flex his thumb. X-rays of the hand revealed no fracture. The records reveal the doctor suspected tendon damage and ordered an MRI of the Cardona's right thumb. Among other things, the MRI performed on April 29, 2014 revealed persistent mild marrow edema along the ulnar aspect of Cardona's right thumb and findings "concerning for possibility of a small avulsion fragment at the distal insertion of the ulnar collateral ligament" and recommended x-ray correlation. The MRI impression suggested that if no fragment was detected, "partial tearing of the distal ulnar collateral ligament is suspected."

The clinical medical records indicate Cardona first complained that his shoulder was making a popping noise on April 8. According to Cardona, however, the clinic only treated his hand where he was struck, gave him pain medication, and released him from care on April 14. Cardona was still in a lot of pain after he was released from treatment.

From May 2 through June 2, Cardona sought additional treatment for his injuries from a chiropractor in Oak Cliff. Cardona missed about two to three months of work immediately after the accident and never returned to work for Ramer. Cardona testified that on the evening of the accident, he could not do anything because he had a lot of pain in his hand, arm, and shoulder. Cardona continued to have difficulty with daily activities involving grabbing, grasping, and picking up objects with his hand as reflected in the May 2 records from the chiropractor. Also, the pain in his hand, arm, and shoulder prevented him from doing many activities including showering, tying his shoes, and playing ball and hugging his grandson at least from the date of the accident to when he completed treatment on June 2. After he was released from chiropractic treatment on

June 2, he felt better, but he continued to have some pain and impairment. Cardona testified that within the last six months leading up to the trial, he continued to experience pain and impairment about once a month.

Contrary to Cardona's testimony, Ramer's owner/president John Winger testified that Gene's Construction was totally responsible for its pump and the cleaning of the hoses. Winger also stated it takes only one person to clean out a cement hose, although he had never done it. Winger asserted his employees never hold down the hose for cleaning and that cleaning is never done by or the responsibility of Ramer. Winger further denied that Cardona was holding down the hose on the day he was injured and speculated he may have been injured when a rock blew out of the hose and hit Cardona in the hand as Gene's Construction employees cleaned out the pump. Nevertheless, Winger did admit that during hose cleaning, there is pressure used and a sponge ball is blown through the hose "and it needs to have some safe stuff going on" and "there's usually a designated place that they wash out." Winger also admitted there was risk involved in cleaning the hose.

Ramer also presented testimony from chiropractor Ronald Clifford indicating the chiropractic treatment Cardona received was neither reasonable nor necessary for the injuries he sustained in the accident. After the trial, the trial court signed a final judgment against Ramer awarding Cardona damages plus prejudgment interest and costs totaling $39,801.62. Despite Ramer's timely request for findings of fact and conclusions of law and notice of past due findings, the trial court did not issue any findings. This appeal ensued.

**ANALYSIS**

A.      **Findings of Fact and Conclusions of Law**

In his first issue, Cardona argues the trial court erred in failing to file requested findings of fact and conclusions of law. After a bench trial, and pursuant to a party's proper and timely

requests for findings under rules 296 and 297 of the Texas Rules of Civil Procedure, the trial court is required to make findings on the controlling or ultimate issue in the case. *See Guaranty Bond State Bank v. Tucker*, 462 S.W.2d 398, 404–05 (Tex. App.—Dallas 1970, writ ref'd n.r.e.). But the trial court is not required to make findings on evidentiary matters or undisputed facts. *Id*. at 405. An ultimate fact issue is one essential to the cause of action and seeks a fact that would have a direct effect on the judgment in contrast to an evidentiary issue which the court may consider in merely deciding the controlling issue. *See In re Marriage of Edwards,* 79 S.W.3d 88, 95 (Tex. App.—Texarkana 2002, no pet.).

When the trial court fails to enter findings on an ultimate issue, harm to the complaining party is presumed unless the record before us affirmatively shows the complaining party suffered no injury. *See Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017). In determining harm, we consider whether the lack of findings prevents the appellant from properly presenting the issues presented for review on appeal. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). Generally, an appellant is harmed if, under the circumstances of the case, it must guess at the reason the trial court ruled against it. *See Larry F. Smith, Inc. v. The Weber Co*., 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied). But fact findings are not necessary when the matters in question are not disputed or when there is only one ground of recovery or defense. *See Ad Villarai,* 519 S.W.3d at 135.

Ramer argues it must guess as to the reasons the trial court ruled against it because Cardona's pleading asserted several causes of action and Ramer's answer brought forth several affirmative defenses. While Cardona's live pleading may have contained other causes of action in addition to its negligence claim, the evidence presented at trial focused exclusively on Cardona's negligence claim against Ramer. There was no other ground of recovery presented by Cardona at trial. Ramer does not identify any other ground that would support the trial court's judgment

against it. In its appellate brief, Ramer acknowledges that, at trial, Cardona only pursued a negligence claim based on inadequate manpower and that the final judgment awarded Cardona damages on its negligence claim against Ramer. Based on the record before us and Ramer's acknowledgement on appeal, Ramer does not have to guess at the reason the trial court ruled against it. We therefore conclude the record affirmatively shows Ramer suffered no injury from the trial court's failure to make findings of fact and conclusions of law. Accordingly, we resolve Ramer's first issue against it.

### B. Legal Sufficiency

In its second issue, Ramer challenges the legal sufficiency of the evidence to establish that Ramer owed any duty to Cardona or that any duty breached by Ramer proximately caused Cardona's injury. Ramer also contends the evidence is legally insufficient to support certain elements of the trial court's damage award.

To succeed on its legal sufficiency complaint, Ramer must show there was no evidence to support the challenged adverse findings. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). In our review, we consider evidence in the light most favorable to the verdict, indulging every reasonable inference in support of the verdict and crediting favorable evidence when reasonable factfinders could do so and disregarding contrary evidence unless reasonable factfinders could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex. 2005). If more than a scintilla of evidence exists to support the challenged element, the legal sufficiency challenge must fail. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

To prevail on a general negligence cause of action based in any theory of liability, a plaintiff must prove (1) a legal duty, (2) breach of that duty, and (3) damages proximately caused by the breach. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). The

existence of a duty is a question of law for the court to decide from essential undisputed facts surrounding the occurrence in question or when the evidence conclusively establishes the pertinent facts and reasonable inferences to be drawn from them. *See Joeris Gen. Contractors, Ltd. v. Cumpian*, 531 S.W.3d 187, 191 (Tex. App.—San Antonio 2016, pet. denied). Proximate cause includes the components of cause in fact and foreseeability. *See Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017). Cause in fact requires a showing that the act or omission was a substantial factor in bringing about the injury and without which harm would not have occurred. *Id*. Foreseeability, on the other hand, addresses the proper scope of a defendant's legal responsibility for negligent conduct that in fact causes harm and asks whether the harm should have been anticipated and whether policy considerations should limit the consequences of a defendant's conduct. *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017).

The parties stipulated that Cardona was an employee of Ramer at the time of the accident. An employer has a non-delegable duty to provide a safe place to work and adequate help in a work assignment. *See Drake v. Wilson N. Jones Med. Ctr.*, 259 S.W.3d 386, 389 (Tex. App.—Dallas 2008, pet denied). Although Winger admitted he was aware there were risks involved in cleaning out the cement hose, he stated that Ramer employees never performed the task. He further indicated that on the day of the accident, Gene's Construction was responsible for cleaning the hose because the hose belonged to Gene's Construction. Cardona, on the other hand, testified that he always helped clean out the hoses when he worked for Ramer and that there were typically between six and eight employees holding the hose during clean out. Cardona further testified the hose has a lot of pressure when it is being cleaned and it is held so the hose does not "splatter the walls." In response to the question, "Were you specifically told to hold the hose so that it would not splash material at the construction site where you work?" Cardona replied, "Yes, sir." On the day Cardona was injured, however, there were only three Ramer employees and one supervisor,

Lopez, at the job site. Cardona stated that he was holding the end of the hose along with the two other Ramer employees when the pressure in the hose took over and "the hose won," striking his hand and causing his injuries. Accordingly, the evidence before the trial court was legally sufficient to establish that Ramer breached the duty of care that Ramer owed to Cardona and that the breach was a proximate cause of Cardona's injuries. Our conclusion makes it unnecessary to address Ramer's additional arguments regarding negligence.

Ramer also asserts the evidence is legally insufficient to establish Cardona's physical impairment damages. Physical impairment is a distinct injury that includes limitations on physical activities. *See Estrada v. Dillon,* 44 S.W.3d 558, 561–62 (Tex. 2001). Evidence of physical impairment may include proof of the need for physical therapy, the inability to engage in certain physical activities, or difficulty performing tasks. *See Pierre v. Swearingen*, 331 S.W.3d 150, 156 (Tex. App.—Dallas 2011, no pet.) (physical therapy and activities); *Day v. Domin*, No. 05-14-00467-CV, 2015 WL 1743153, at *4 (Tex. App.—Dallas Apr. 16, 2015, no pet.) (mem. op.) (tasks).

At trial, Cardona detailed how his injuries interfered with his daily life. He indicated that for the almost three months he was being treated for his injuries, there were activities he could not do or had difficulty performing such as playing with his grandson, showering, fastening his shoes, and grasping objects with his right hand. He further indicated that he still had pain and impairment about once per month in the six months leading up to the trial in August 2017. Viewing the evidence in the light most favorable to the verdict, we conclude there was legally sufficient evidence to support the trial court's award for past physical impairment.

Ramer also contends the amount the trial court awarded for medical expenses should not include the $7,212 chiropractic bill because the treatment was neither reasonable nor necessary for the injuries he sustained in the accident. Cardona admitted into evidence a medical expense

affidavit from his chiropractor's office that the services provided to Cardona were necessary and the amount charged was reasonable. Moreover, Cardona testified his right hand was swollen and his arm, shoulder, and neck hurt the day of the accident. There was evidence that Cardona complained to the clinic about his right hand and arm when he first presented for treatment. Cardona also complained about pain radiating to his shoulder and his shoulder making popping noises about one month after the accident. Ramer's medical expert testified that the "mechanism of injury did not support injuries sustained to the shoulder, right elbow, neck or back." However, on cross-examination the chiropractor admitted that trauma might cause a degenerative condition to become symptomatic and that if an arm is whipped back and forward dramatically, it could, in extreme circumstances, affect the spinal cord. Based on the conflicting evidence before the trial court, we cannot conclude the evidence was legally insufficient to include Cardona's chiropractic bill in the amount awarded for his medical expenses.

Under its second issue, Ramer also argues that Cardona failed to mitigate damages with respect to his claim for lost earnings because on the day of his initial visit to the medical clinic, the doctor released Cardona to work light duty with a splint on his thumb with instructions not to lift more than ten pounds. A defendant bears the burden of proof to establish the plaintiff's lack of diligence and the amount by which the failure to mitigate increased the damages. *See U.S. Rest. Props. Operating L.P. v. Motel Enters., Inc.*, 104 S.W.3d 284, 293 (Tex. App.—Beaumont 2003, pet. denied).

Ramer's mitigation argument is based on Winger's testimony that "light duty" tasks Cardona could have performed were carrying lumber, helping another worker carry steel, stakes, washing the driveway down with the hose, and pulling out nails with his left-hand. Cardona testified that in addition to the injury to his right hand, which prevented him from grasping objects with his right hand, he had pain and impairment to his right arm and shoulder. Cardona also

–9–

testified that he was right-handed. There is nothing in the record to indicate the Cardona would be able to perform the tasks Winger considered to be light duty with only one working hand or that the doctor's definition of light duty necessarily contemplated the tasks identified by Winger. Viewed in the light most favorable to judgment, the trial court could have determined that Ramer simply did not meet its burden with respect to mitigation.

## CONCLUSION

We resolve both of Ramer's issues against it. We affirm the trial court's judgment.


/David Evans/
DAVID EVANS
JUSTICE

171435F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RAMER CONCRETE, INC., Appellant

No. 05-17-01435-CV      V.

JUAN CARDONA, Appellee

On Appeal from the County Court at Law No. 3, Dallas County, Texas
Trial Court Cause No. CC-16-00560-C.
Opinion delivered by Justice Evans, Justices Myers and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Juan Cardona recover his costs of this appeal from appellant Ramer Concrete, Inc.

Judgment entered this 1st day of November, 2018.