104 S.W.3d 341 (2003)
In the Interest of J.R.K., a Child.
No. 05-01-01426-CV.
Court of Appeals of Texas, Dallas.
May 7, 2003.
Sarah R. Guidry, Houston, Amelia Shawn Hurst Richards, Arlington, Cathren Page Koehlert, Austin, for Appellant.
Robert O. Hultkrantz, Hultkrantz Law Office, John Charles Hardin, McKinney, for Appellee.
Greg Willis, Plano, for ad litem.
Before Justices MORRIS, MOSELEY, and FRANCIS.

OPINION
Opinion By Justice FRANCIS.
The Texas Department of Protective and Regulatory Services (the Department) petitioned to terminate the parental rights of Aruna and Bhaskar K. (the K.'s) to their daughter J.R.K. after the K.'s three-day-old baby, V., was murdered. The jury *342 found the K.'s presented a danger to J.R.K. but failed to find termination was in J.R.K.'s best interest. The State appealed, arguing the evidence is legally and factually insufficient to support the jury's failure to find. We affirm the trial court's judgment.
Mr. and Mrs. K. are Indian nationals who are husband and wife as well as uncle and niece. In July 1996, Mrs. K. gave birth to their first child, J.R.K. On December 6, 1999, Mrs. K. gave birth to their second child, V. V. was born with an inverted penis, which made determining his sex difficult. The defect, however, was correctable. On December 8, the K.'s left the hospital with V., who was healthy and had no life-threatening conditions. Four hours later, V. was dead. The baby's skull had been crushed, and later it was determined he had been fed glass and strangled.
The State sought to terminate the K.'s parental rights to J.R.K. and presented evidence that the K.'s killed V. The K.'s, however, denied the allegation. After hearing three days of testimony, the jury found by clear and convincing evidence that both Mr. and Mrs. K. (1) endangered J.R.K. and (2) failed to comply with court orders necessary to obtain her return. The jury, however, failed to find by clear and convincing evidence that termination was in J.R.K.'s best interest. The jury found the Department should be named J.R.K.'s managing conservator and the K.'s should be named possessory conservators. The trial court rendered judgment in accordance with the verdict. In four issues, the Department challenges the legal and factual sufficiency of the evidence to support the jury's failure to find that termination of the K.'s parental rights was in J.R.K.'s best interest.
Involuntary termination of parental rights involves fundamental constitutional rights. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); In re G.M., 596 S.W.2d 846, 846 (Tex. 1980). Thus, for the government to permanently sever the tie between parent and child, it must persuade the fact finder by "clear and convincing" evidence that (1) the parent has committed one of several enumerated acts and (2) termination is in the child's best interest. See Tex. Fam. Code Ann. §§ 161.001, 161.206(a) (Vernon 2002); G.M., 596 S.W.2d at 847. Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam.Code Ann. § 101.007 (Vernon 2002). This level of certainty is necessary to preserve the fundamental fairness in government-initiated proceedings that threaten to end a natural parent's desire for and right to companionship, care, custody, and management of his or her children. See Santosky v. Kramer, 455 U.S. 745, 756-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). "A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one." Id. (quoting Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)).
The Texas Supreme Court recently issued two opinions holding that the constitutionally mandated clear and convincing evidence burden of proof requires that we apply a higher level of appellate scrutiny when reviewing termination findings for legal and factual sufficiency of the evidence. In re J.F.C., 96 S.W.3d 256 (Tex. 2002) (legal sufficiency); In re C.H., 89 S.W.3d 17 (Tex.2002) (factual sufficiency). Whether reviewing legal or factual sufficiency, the standard appears to be essentially the same: whether a reasonable trier of fact could reasonably form a firm belief *343 or conviction about the truth of the State's allegations. J.F.C., 96 S.W.3d at 266 ("In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."); C.H., 89 S.W.3d at 25 ("We hold that the appellate standard of reviewing termination findings [for factual sufficiency] is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.").
The court recognized that the only distinction between the standards "may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." J.F.C., 96 S.W.3d at 266. The court explained:
To give appropriate deference to the fact finder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.
* * *
In a factual sufficiency review, as we explained in In re C.H., a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.... A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not have reasonably formed a firm conviction or belief, then the evidence is factually insufficient.
Id.
In both J.F.C. and C.H., the parental rights were terminated; thus, the court was reviewing affirmative findings, and its standards necessarily were formulated to those ends. In this case, however, the Department failed to persuade the jury by clear and convincing evidence that termination was in J.R.K.'s best interest and is appealing the jury's failure to make that affirmative finding. Whether the government or the parent is appealing an adverse jury finding, however, should not impact the level of appellate review. The opinions in C.H. and J.F.C. made clear that the burden of proof at trial necessarily affects appellate review of the evidence. J.F.C., 96 S.W.3d at 264-65; C.H., 89 S.W.3d at 25. That logic applies whether it is the State or the parent appealing the jury's decision. As the court stated, "A standard that focuses on whether a reasonable jury could form a firm conviction or belief retains the deference an appellate court must have for the factfinder's role." C.H., 89 S.W.3d at 26.
Working within the framework of J.F.C. and C.H., adhering to their mandates to apply an intermediate level of appellate review, and using their language, we conclude we review the legal and factual sufficiency of the evidence of a failure to find by asking whether the evidence is such *344 that a factfinder could reasonably fail to form a firm conviction or belief about the truth of the State's allegations. Stated another way, the State must show on appeal that the only reasonable decision a factfinder could reach is that termination is in the child's best interest.
This standard imposes a heavy burden on the government on appeal and leaves little, if any, practical difference between legal and factual sufficiency review of evidence in parental termination cases. However, we are bound by the standards of review mandated in J.F.C. and C.H. Further, if the government has failed to persuade a jury by clear and convincing evidence to terminate parental rights, overturning a nonfinding should be an extraordinary result.
Finally, while there is an argument that constitutional implications do not arise when the parents' rights are not terminated, and that we would not be bound by a clear and convincing evidence appellate standard of review, we decline to accept that argument. Constitutional protections are in place so that parental rights are terminated only when the evidence to support such action is clear and convincing. By not applying the intermediate appellate standard of review on a State's appeal, we would reduce the government's burden, making it easier to obtain a reversal and a second chance at a more favorable termination finding. The standard should not vary according to who loses at trial.
Thus, with the above standards in mind, we turn to the Department's complaints that the evidence is legally and factually insufficient to support the jury's failure to find termination is in J.R.K.'s best interest. We begin with the strong presumption that the best interest of a child is usually served by preserving the parent-child relationship. See Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex.1976); Swate v. Swate, 72 S.W.3d 763, 767 (Tex.App.-Waco 2002, pet. denied). Thus, the Department had the burden to rebut that presumption by clear and convincing evidence.
The Texas Supreme Court has recognized several factors to consider in determining whether termination is in a child's best interest. Holley v. Adams, 544 S.W.2d 367, 372 (Tex.1976). These include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. Id. This list of factors is not exhaustive, and no single consideration is controlling. Id.
On appeal, the Department acknowledges these factors and argues "no rational explanation" accounts for the jury's failure to find in this case. The Department relies heavily on its account of the circumstances surrounding V.'s death and its assertion, disputed at trial, that J.R.K. witnessed the killing. It also relies on the K.'s "inappropriate and illegal sexual choices," pointing specifically to the fact Mr. and Mrs. K. are uncle and niece and that Mrs. K. was pregnant with her third child at the time of trial despite "good medical advice" that their "relation could have caused V.'s birth defect." Finally, it asserts the K.'s have not remedied problems that led to J.R.K.'s removal.
*345 We do not disagree that the circumstances surrounding V.'s death were tragic. However, the Department's arguments completely ignore evidence presented to the jury concerning the cultural ramifications this case presents. The K.'s are practicing Hindus whose native language is Telegu. J.R.K. was being reared Hindu and being taught to speak Telegu, as well as English. She was three-and-a-half years old when she was removed from her parents' home and was placed with foster parents who are Caucasian Christians. Six months after her removal, J.R.K. began practicing Christian beliefs on a daily basis with her foster family and she no longer speaks her parents' native language. Additionally, while J.R.K.'s foster mother initially prepared traditional Indian foods (given to her by Mr. K.) for J.R.K., she no longer does so. The jury heard evidence that J.R.K. "is more rejecting of her culture and her people and her traditions." She preferred to be white "to resemble her foster family." In one incident recounted to the jury, J.R.K. put lotion on her arm and was "delighted" her arm was white and did not want to rub in the lotion. While the psychologist attributed this to post-traumatic stress disorder, she also acknowledged reporting to the trial court "words to the effect this child is a long way along the road toward Americanization."
Additionally, there was evidence both parents loved their daughter, and Mr. K. regularly exercised his visitations with her (Mrs. K. was in jail awaiting trial on criminal charges during some of the time this suit was pending). A friend of the K.'s said she was around the K.'s frequently and they were never mean to J.R.K. and never hit her. J.R.K.'s grandparents, who live in India, regularly sent J.R.K. packages with presents and cards and wanted, but could not obtain, custody of J.R.K. at the time of removal.
The jury charge contained the Holley factors to guide jurors in their decision. From the above evidence, a jury could reasonably have concluded the Department's future plans for J.R.K. were not in her best interest. Certainly, they could reasonably have concluded that terminating her parents' rights would negatively affect her future emotional well-being. Finally, we note the jury's decision to allow the K.'s only possessory rights to J.R.K. suggests the jury thoughtfully considered the evidence presented and made a reasoned decision it believed was in J.R.K.'s best interest. The jury refused to find by clear and convincing evidence that termination of the K.'s parental rights was in J.R.K.'s best interest. Having reviewed the evidence presented, we cannot conclude the evidence is legally and factually insufficient to support the jury's verdict. We resolve the Department's issues against it.
We affirm the trial court's judgment.