131 S.W.3d 704 (2004)
In the Interest of S.A.W., JR., a Child.
No. 05-03-01225-CV.
Court of Appeals of Texas, Dallas.
April 6, 2004.
*705 Grady R. Thompson, McWilliams & Thompson, P.C., McKinney, for Appellant.
John R. Roach, Criminal Dist. Atty., Emily Johnson-Liu, Michelle L. Voirin, Asst. Criminal Dist. Atty., McKinney, for Appellee.
Before Justices MORRIS, FITZGERALD, and FRANCIS.

*706 OPINION
Opinion by Justice FRANCIS.
After a trial before the court, appellant Mona McSwain appeals the judgment terminating her parental rights to her son S.A.W., Jr. In three points of error, appellant contends the trial court erred in failing to file findings of fact and conclusions of law and complains the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the child. We affirm the trial court's judgment.
Appellant was thirty-seven years old when she gave birth to S.A.W. on June 1, 2001. Appellant became pregnant with S.A.W. while she was separated from her husband. S.A.W.'s father had previously lived with appellant, her husband, and their three children. After S.A.W.'s birth, appellant and her four children moved in with S.A.W.'s father. When she discovered marijuana being grown in a closet of their home, appellant sent her three older children to live with their paternal grandparents. Appellant then called the Texas Department of Protective and Regulatory Services on February 1, 2002 to assist her and S.A.W. in leaving the premises, asserting S.A.W.'s father and others were using drugs in the home.
Michelle Hiza, an investigator from the Department, testified that on her first visit to the home on February 11, she was told by S.A.W.'s father that appellant and S.A.W. had left. S.A.W.'s father stated he and appellant split up because he would not share his marijuana with her or tell her when he was using marijuana. Hiza detected a strong odor of marijuana from the back bedroom. On Hiza's second visit, one week later, appellant and S.A.W. had returned to live with S.A.W.'s father. At that point, Hiza helped place appellant and S.A.W. in a shelter and developed a safety plan. Appellant admitted she and S.A.W.'s father used marijuana while the baby was in the house. Appellant also said that S.A.W.'s father had shaken him and shouted obscenities to and about the boy. Drug tests taken on the eight-month-old S.A.W. by the Department on February 19, were positive for cocaine and marijuana. Appellant tested positive for marijuana. Appellant surmised that S.A.W. had gotten the cocaine from some powder left on a computer table after she and S.A.W.'s father had used the drug.
By March 5, 2002, the date the Department received the drug test results, appellant had left the shelter and returned to live with S.A.W.'s father contrary to the Department's safety plan. The child was then removed from the home and placed in foster care. Appellant pleaded guilty to endangering a child and was placed on deferred adjudication probation. Although the initial Department goal was reunification, the Department later changed its goal and filed this petition to terminate appellant's parental rights.
At trial, the Department relied heavily on evidence detailing appellant's eighteen-year history of lifestyle choices that repeatedly exposed her as well as her children to danger, abuse, and violence. Evidence was presented that physical abuse by appellant's first husband caused her to have two miscarriages. The trial court heard testimony that appellant's second husband used and sold "speed" out of their apartment, that he and appellant would use whatever was left over, and that he physically abused her. The Department received reports that appellant's second husband physically abused their son and that her daughter had been sexually abused by one of appellant's boyfriends.
Although appellant ultimately completed the programs required as part of the Department's service plan, she delayed beginning *707 the programs and did not complete many until seven months after S.A.W. was removed from her care. Appellant's parenting class instructor testified that although appellant attended classes and did the homework, she did not exhibit an understanding of the connection between the skills learned in class and real life application. She indicated that appellant did not clearly take responsibility for the things she had done in her past or her role as a future parent. The instructor stated she would have concern for the emotional well-being of a child placed in appellant's care.
By the time of trial, appellant had been living alone in a two-bedroom apartment for almost one year. The apartment was clean and had appropriate furnishings for S.A.W. Although appellant did not have a phone, she had access to a neighbor's phone. Appellant testified her only income was the $550 a month she received in disability benefits as a result of a childhood accident that rendered her unable to work or drive. If S.A.W. was returned to her, she would rely on Medicare, food stamps, and other programs for assistance in meeting the child's needs. Several witnesses testified that S.A.W. was bonded and very close to his biological mother. Three of appellant's neighbors testified they had known appellant for about eleven months and that she appeared to be a responsible person who lived a quiet life. They also indicated they would trust appellant to watch their children and grandchildren. The record also reflects that appellant had passed subsequent drug tests.
In her first point of error, appellant complains she was harmed by the trial court's failure to file findings of fact and conclusions of law despite her timely requests. Our review of the record reveals the trial court issued findings of fact and conclusions of law on September 22, 2003. Such findings included a specific determination that termination of appellant's parental rights was in S.A.W.'s best interest. To the extent appellant complains she was harmed by the absence of findings of fact, this issue is moot.
Under this first issue appellant also appears to argue that the best interest question is such a broad area that the trial court was required to make specific findings on the determinative fact questions. We disagree. A trial court is only required to make findings on ultimate controlling issues, not on mere evidentiary issues. In re Marriage of Edwards, 79 S.W.3d 88, 94 (Tex.App.-Texarkana 2002, no pet.). An ultimate issue of fact is one that is essential to the cause of action and seeks a fact that would have a direct effect on the judgment. Id. Whether the termination of appellant's parental rights was in S.A.W.'s best interest is such a controlling issue. Other factual determinations the court may have considered in determining the controlling issues were merely evidentiary issues. See id. We resolve appellant's first issue against her.
In her second and third issues appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in the best interest of S.A.W.
Before a parent's right can be involuntarily terminated, the Department must prove by clear and convincing evidence that (1) the parent has committed one of several enumerated acts, and (2) termination is in the child's best interest. See Tex. Fam.Code Ann. § 161.001, 161.206(a) (Vernon 2002). Because appellant concedes the evidence is legally and factually sufficient to support the trial court's finding that the first prong of the test is *708 satisfied, we address only the trial court's findings with respect to the second prong.
Whether analyzing a legal or factual sufficiency challenge, the critical inquiry is whether based on the trial evidence, a fact finder could reasonably form a firm belief or conviction about the truth of the State's allegations. In re J.R.K., 104 S.W.3d 341, 342-43 (Tex.App.-Dallas 2003, no pet.). In a legal sufficiency review we view the evidence in the light most favorable to the judgment, disregarding only the evidence that a reasonable factfinder could have disbelieved or found to have been incredible. Id. When reviewing the evidence for factual sufficiency, we must give due consideration to evidence the factfinder could reasonably have found to be clear and convincing, reversing the judgment only, if in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of its finding is so significant that it could not have formed a firm conviction or belief. Id.
It is with these standards in mind, that we address appellant's contentions that the evidence is both legally and factually insufficient to support the trial court's finding that termination was in S.A.W.'s best interest. There are several factors to consider in determining whether termination is in a child's best interest. These include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of those seeking custody; (5) the programs available to assist those individuals or by the agency seeking custody; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 372 (Tex.1976).
In analyzing these factors, appellant notes that although there was undisputed evidence about her history of drug use and relationships with violent men, this "pattern of behavior" is legally and factually insufficient to establish a present and future emotional and physical risk to S.A.W. She argues that her disability did not prevent her from caring for her three other children before she sent them to live with their grandparents and contends there are many programs to assist her in caring for S.A.W. Appellant asserts that by pleading guilty to the child endangerment charge, she acknowledges her responsibility for the situation. Appellant also relies on evidence that S.A.W. was healthy, in good physical condition, and current on his immunizations when he was removed from the home. Finally, appellant refers to the testimony of several Department witnesses who indicated that appellant made significant improvements since S.A.W.'s removal.
Despite the improvements that appellant has made in her life and her completion of several service programs, significant evidence demonstrated that appellant continued to exhibit a fundamental lack of understanding of her own role in S.A.W.'s removal. Many of the Department's witnesses expressed doubts about appellant's ability to make and maintain the necessary changes in her life to alleviate the risks to S.A.W. if he was returned to her. Gretchen Ferhm, a Department caseworker, testified that appellant "attaches herself to people who aren't safe for her," "perceives herself as victim" and fails to take responsibility for her choices. Fehrm noted appellant continually placed the men in her life above the safety of her children. Fehrm testified that statements in appellant's therapy records indicate that appellant is still dealing with the same issues *709 that were present one and one-half years ago and that she has had no significant change in her treatment plan. Fehrm saw no improvement in appellant's willingness to take responsibility and change things after counseling. She noted appellant's statements continued to focus on her interest instead of S.A.W.'s.
Department investigator Michelle Hiza testified that appellant blamed others for her drug use and denied she had a drug problem. Hiza testified that she did not believe that the changes appellant made "are lasting in changing the pattern or behaviors that [she has] demonstrated to me from the beginning of the removal." She also said appellant had not accepted her role in the abuse and neglect. She indicated that after S.A.W.'s removal, appellant appeared at the Department office with S.A.W.'s father and told Hiza they were going to work the Department's service plan together. Although appellant was to not have any contact with S.A.W.'s father as a condition of her probation, she was seen with him on several occasions and even appeared with him at two of her scheduled visitations with S.A.W. Hiza stated that she did not believe that appellant had succeeded in breaking her pattern of detrimental lifestyle choices. She testified that despite going through the service plan, appellant still articulated the same reasons for the child's removal as she did when S.A.W. was first removed. Appellant continued to blame others instead of herself for S.A.W.'s removal. Although appellant improved herself and her living skills, she still had contact with those who were not good for her and might be dangerous to the child's safety.
Another caseworker, Alex Dixon, testified that she did not feel appellant understood her individual responsibility for the danger in which she had placed S.A.W. Appellant's probation officer testified appellant pretty much placed the blame for S.A.W.'s removal on S.A.W.'s father. Finally, the CASA worker assigned to the case stated her experience with appellant revealed that appellant put her interest over S.A.W.'s and that she did not take responsibility for her own actions.
Although appellant ultimately complied with the Department's service plan, and had made significant lifestyle improvements in the year before trial, all of the Department's witnesses continued to express doubt that appellant had developed a real understanding about which of her behaviors and attitudes posed a danger to S.A.W. and ultimately led to his removal. The trial court could conclude that this lack of understanding would continue to pose a danger to S.A.W. if he was returned to appellant. After reviewing the evidence presented, we cannot conclude the evidence is legally and factually insufficient to support the trial court's finding that termination of appellant's parental rights was in S.A.W.'s best interest. We resolve appellant's second and third issues against her.
We affirm the trial court's judgment.