

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-14-00399-CV

**IN THE INTEREST OF D. M.**, A Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-02386
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Karen Angelini, Justice
Dissenting Opinion by: Rebeca C. Martinez, Justice

Sitting:    Karen Angelini, Justice
            Rebeca C. Martinez, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed: November 24, 2014

Because I disagree that the Department met its burden of proving by clear and convincing evidence that termination of Emma's parental rights is in the best interest of D.M., I respectfully dissent.  Given the strict scrutiny we are to give to a termination proceeding, and our mandated deference in favor of the parent when involuntary termination of parental rights to a child are at issue, I believe the majority has failed to protect the parent's constitutional rights to due process in this case.

To terminate parental rights, the Department must prove by clear and convincing evidence that the parent engaged in an act or omission listed in subsection 161.001(1) and that termination is in the best interest of the child.  *See* TEX. FAM. CODE ANN. § 161.001(1), (2)

(West 2014); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Both elements must be proved and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *In re C.L.C*, 119 S.W.3d 382, 390 (Tex. App.—Tyler 2003, no pet.). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). "It is because termination of parental rights is such a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by a heightened burden of proof of 'clear and convincing evidence.'" *In re D.T.*, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (quoting *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980)). We are duty bound to carefully scrutinize termination proceedings and must strictly construe involuntary termination statutes in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). The higher burden of proof in termination cases alters the usual appellate standards of legal and factual sufficiency review in order to protect the parent's constitutional interests. *In re J.F.C.*, 96 S.W.3d at 265; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Keeping in mind this elevated burden of proof, as well as the factors enunciated in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976), we review the evidence before the trial court to determine whether termination is in D.M.'s best interest.

The first *Holley* factor, the child's desires, is neutral. D.M. was only three years old at the time of trial and was too young to testify about his desires. *See In re T.G.R.-M.*, 404 S.W.3d 7, 16 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "The young age of the child render[s]

consideration of the child's desires neutral." *In re A.C.*, 394 S.W.3d 633, 643 (Tex. App.— Houston [1st Dist.] 2012, no pet.).

We next consider the emotional and physical needs of the child now and in the future and the emotional and physical danger to the child now and in the future. At three years of age, D.M. is still a very young child. By all accounts, he is a normal, happy child, and has progressed, both emotionally and educationally, while in foster care. The trial court also heard testimony that Emma was very engaged with her son during visits with him, that she was very appropriate with him, and that there was a bond between mother and son. There was absolutely no evidence presented regarding future danger to D.M. at the hands of his mother other than conclusory and speculative testimony that Emma "may" have difficulty maintaining her sobriety. Given the elevated burden of proof in termination cases, I cannot conclude that such testimony amounts to clear and convincing evidence that Emma is unable to meet her child's needs or that she presents a danger to him. *See* TEX. FAM. CODE ANN. § 161.001(2) (trial court's best-interest finding must be supported by clear and convincing evidence in the record); *In re E.N.C.*, 384 S.W.3d at 808 (holding that lack of evidence cannot "contradict a finding as if it were evidence supporting a finding"). Based on the lack of evidence concerning recent misconduct, the trial court could not reasonably infer that Emma's past conduct would reoccur in the future so as to prevent her from providing a stable home for her child. I believe that these factors weigh against the conclusion that termination is in D.M.'s best interest.

Another relevant factor is the parental abilities of the individuals seeking custody. *Holley*, 544 S.W.2d at 372. The Department caseworker testified that Emma has not been able to show that she can meet D.M.'s needs. This testimony, however, was not elaborated upon in any fashion, and no details whatsoever were supplied to explain this bare assertion. *See In re A.H.*, 414 S.W.3d

802, 807 (Tex. App.—San Antonio 2013, no pet.) ("conclusory testimony, such as the caseworker's, even if uncontradicted does not amount to more than a scintilla of evidence"); *Williams v. Williams*, 150 S.W.3d 436, 450 (Tex. App.—Austin 2004, pet. denied) (caseworker's unsupported testimony, which constituted sole evidence at trial, did not support termination). Emma's counselor, in contrast, testified that she is currently in recovery, is capable of living a life of recovery, and could care for her family. I therefore conclude that this factor also weighs against the conclusion that termination is in D.M.'s best interest.

Next, we consider the plans for the child by Emma and the stability of the home. *See Holley*, 544 S.W.2d at 372. In its brief, the Department contends that no evidence was presented regarding where Emma was living or whether it was appropriate for a child. It was the Department's burden, however, to present such evidence. *See In re E.N.C.*, 384 S.W.3d at 810 ("The Department is required to support its allegations against a parent by clear and convincing evidence; conjecture is not enough."). Emma's counselor testified that she has been able to maintain a residence and employment. The Department did not present any evidence to refute this testimony. Given that the Department failed to show that either Emma's future plans for D.M. or her home were inappropriate or unsuitable, I would conclude that these factors also weigh against termination.

Considering the plans for the child by the agency seeking custody and the stability of the proposed placement, the evidence introduced at trial reflects favorably on the foster care placement. The foster father testified that D.M. was thriving in the foster home and that he and his wife planned to adopt D.M. The Department's presentation of evidence pursued a favorable finding towards foster placement, and neglected to refute the evidence supporting Emma's claims of rehabilitation, employment, and ability to provide stable housing for her child. Although these

factors could be said to weigh in favor of termination, I would consider them to be neutral given that the "best interest standard does not permit termination merely because a child might be better off living elsewhere." *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.); *see also In re C.R.*, 263 S.W.3d 368, 375 (Tex. App.—Dallas 2008, no pet.) (same).

Finally, a reviewing court must consider the acts or omissions of the parent that indicate the parent-child relationship is improper, as well as any excuses for the behavior. *See Holley*, 544 S.W.2d at 372. Regarding the conduct that led to D.M.'s removal from her home, Emma admitted that she left the child in a dangerous environment. She also admitted that she was in an abusive relationship with D.M.'s father. At the time of trial, D.M.'s father was incarcerated. He testified telephonically that he planned "to stay as far away as possible" from Emma after his release. Emma similarly testified that D.M.'s father would not return to her home after his release from prison. While Emma's past conduct, including her drug use and frequent incarcerations, was harmful to D.M., she appeared to recognize that her acts and omissions were detrimental to her child, and worked to complete all of the court-ordered services, including parenting classes, counseling, and drug treatment. She also paid child support and attended all visits with D.M. It is undisputed that she had been clean and sober for 16 months prior to trial. On this record, I would conclude that, although Emma's acts and omissions prior to D.M.'s removal strongly weigh in favor of termination, her significant improvement and undisputed compliance with the court-ordered service plan since that time lessens the weight we give to these factors.

I recognize that when considering the best interest of the child, "evidence of a recent turn-around in behavior by the parent does not totally offset evidence of a pattern of instability and harmful behavior in the past." *Smith v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2003, no pet.) (citing *In re M.G.D.*, 108 S.W.3d 508, 513-14

(Tex. App.—Houston [14th Dist.] 2003, pet. denied)). However, my review of cases in which a parent has made a so-called "turn around" reflects that affirmation of the factfinder's best interest finding is warranted only where the record also contains either evidence to refute the claim of rehabilitation or some additional evidence in support of termination. For example, in *In re M.G.D.*, 108 S.W.3d at 513-15, evidence was presented that the mother had been sober for 18 months prior to trial, had successfully completed parole, had obtained a good job, had broken away from an abusive boyfriend, and had complied in all but minor respects with the family service plan. *Id.* at 513-14. Nonetheless, the record also revealed other evidence weighing in favor of the jury's finding that termination was in the children's best interest, including the mother's admission that she was "not ready" to assume care for children, that her housing was inappropriate, that she had quit attending AA meetings, and that she had no family or community support. *Id.* at 511. Declaring that "jurors are not required to ignore a long history of dependency and abusive behavior merely because it abates as trial approaches," the court thus held that the evidence was sufficient to support the jury's best interest finding. *Id.* at 513-14. Similarly, in *Anderson v. Tex. Dep't of Family & Protective Servs.*, No. 03-06-00327-CV, 2007 WL 1372429, at *4-5 (Tex. App.—Austin May 9, 2007, pet. denied) (mem. op.), the court of appeals affirmed the order finding that termination was in the children's best interest despite evidence that the mother made significant progress in recovering from drug addiction and complied with her court-ordered service plan. *Id.* In that case, there was also evidence that the mother was engaged to a man with two drug-related convictions and that she admitted that she continued to use drugs after the children were removed from her home; additionally, the mother had federal drug charges pending against her and was likely to be sentenced to 10 years in prison. *Id.*

The facts in *In re A.H.*, No. 09-13-00395-CV, 2014 WL 1400771, at \*5 (Tex. App.—Beaumont Apr. 10, 2014, no pet.) (mem. op.), are similar in some respects to the present case. In that case, the mother also struggled with a life-long drug addiction and was sober at the time of trial. *Id*. However, the record also showed that the mother had only achieved sobriety while incarcerated, and there was no evidence that she had the skills to permanently maintain sobriety; in addition, the mother did not have employment or housing, and was therefore unable to provide for the child's needs. *Id*. The Beaumont court therefore held the evidence was sufficient to support the trial court's best interest finding. *Id.* Here, however, we are not presented with a record containing either evidence contradicting Emma's claim of rehabilitation—such as drug use after the child's removal[1] or failure to attend AA meetings—or other additional evidence in support of termination, such as failure to obtain housing or employment. *See, e.g., In re J.W.M.*, 153 S.W.3d 541, 549-50 (Tex. App.—Amarillo 2004, pet. denied) (concluding evidence of mother's rehabilitation was not "free from doubt" because Department presented evidence that mother tested positive for methamphetamines shortly before trial); *In re S.A.W., Jr.*, 131 S.W.3d 704, 708-09 (Tex. App.—Dallas 2004, no pet.) (holding evidence was sufficient to support finding that termination was in child's best interest despite mother's lifestyle improvements and eventual compliance with service plan where Department presented extensive evidence that mother failed to take responsibility for her actions that led to removal of child).

I am also not persuaded that termination can be supported on the basis of the trial court's inferring that Emma's past misconduct was likely to be repeated in the future. The majority relies on two cases for this proposition, but, unlike the case at issue, each involves facts concerning either continuing or recent deliberate misconduct. In *In re J.D.*, 436 S.W.3d 105, 118

---

[1] The only positive drug test in the record was recorded on October 31, 2012, which undisputedly occurred before Emma entered drug treatment and 27 days after the Department filed its petition to terminate Emma's parental rights.

(Tex. App.—Houston [14th Dist.] 2014, no pet.), the trial court inferred from the mother's past inability to meet her child's needs, which included considerable physical abuse of the child, an unwillingness or inability to meet her child's needs in the future. However, in that case, there was also evidence that the mother failed to seek employment and obtain housing and did not visit her child for one year prior to the termination trial. *Id*. at 118, 121. Similarly, in *Castorena v. Tex. Dep't of Protective & Regulatory Servs*., No. 03-02-00653-CV, 2004 WL 903906, at *4-6 (Tex. App.—Austin Apr. 29, 2004, no pet.) (mem. op.), evidence was admitted that the mother: was still living with the children's father who had deliberately turned off the electricity to the family's mobile home; planned to continue living in the family's condemned mobile home; and admitted that her living conditions had an ill effect on her children. Thus, in that case, the trial court was able to reasonably infer from these recent facts that the mother would not be able to meet the emotional and physical needs of her children in the future. *Id.* at *11-12. Here, in contrast, there was simply no evidence of continuing misconduct by Emma that would permit the trial court to infer that she would be unable to meet D.M.'s future needs.

Considering the *Holley* factors and reviewing all the evidence in the record before us, I would conclude that the State failed to meet its burden to establish by clear and convincing evidence that termination of Emma's parental rights is in D.M.'s best interest. I therefore disagree that the trial court could have reasonably formed a firm belief or conviction that termination of Emma's parental rights was in D.M.'s best interest. *See* TEX. FAM. CODE. ANN. § 161.001(2); *In re E.N.C.*, 384 S.W.3d at 809; *In re J.F.C.*, 96 S.W.3d at 266, 272; *see also In re K.C.M.*, 4 S.W.3d 392, 399 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (holding evidence factually insufficient to support trial court's determination that termination was in child's best interest where it was undisputed that mother had been drug-free and sober for 10 months preceding trial and that

she had "turned her life around" while in jail, including completing her GED and parenting and

life skills courses).

Based on the foregoing, I would reverse the portion of the trial court's judgment

terminating Emma's parental rights to D.M. and render judgment denying the Department's

petition for termination.[2]

Rebeca C. Martinez, Justice

---

[2] I note, however, that because Emma's challenge to the Department's Family Code section 153.131 conservatorship was not subsumed within her appeal of the termination order and was not separately challenged on appeal, I would further affirm the trial court's appointment of the Department as the sole managing conservator of D.M. pursuant to section 153.131. *See In re J.A.J.*, 243 S.W.3d 611, 617 (Tex. 2007); *In re R.S.D.*, - - - S.W.3d - - -, No. 04-13-00665-CV, 2014 WL 4335354, at *4 (Tex. App.—San Antonio Sept. 3, 2014, no pet.).