Wendy A. ALLEN, Appellant

v.

John P. MANCINI, Jr., Appellee.

No. 11–04–00067–CV.

Court of Appeals of Texas, Eastland.

June 30, 2005.

Jeffery D. Gooch, The Law Firm of Jeffery D. Gooch, Fort Worth, for Appellant.

Kimberly Pack Wilson, Fraser & Wilson, P.C., Stephenville, for Appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

OPINION

JIM R. WRIGHT, Justice.

Wendy A. Allen and John P. Mancini, Jr. are the parents of L.M.M. Allen and Mancini divorced in 1997. At that time, Allen and Mancini were named joint managing conservators of L.M.M. The trial court ordered that Allen would have the

right to establish the primary residence of the child. In August 2003, Mancini filed a petition to modify the parent-child relationship seeking to be appointed the managing conservator with the right to establish the primary residence of L.M.M. The trial court entered an order in which it removed Allen as the managing conservator with the exclusive right to establish the primary residence of L.M.M. and appointed Mancini as the managing conservator with the exclusive right to establish the primary residence of the child. We affirm.

In her first issue on appeal, Allen argues that the evidence does not support the trial court's finding of material and substantial change in circumstance. An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in making this determination. *Maritime Overseas Corporation v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.), *cert. den'd*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

The best interest of the child shall always be the primary consideration of the court in determining conservatorship and possession. TEX. FAM. CODE ANN. § 153.002 (Vernon 2002). A court may modify the terms and conditions of a joint managing conservatorship if the modification would be in the best interest of the child and if the circumstances of the child or of one or both of the conservators have materially and substantially changed since the rendition of the order. TEX. FAM. CODE ANN. § 156.101(1) (Vernon Supp.2004–2005)[1]. The trial court is given

---

1. Mancini filed his petition to modify the parent-child relationship on August 1, 2003.

wide latitude in determining custody issues. *Peña v. Peña,* 8 S.W.3d 639 (Tex. 1999). A trial court's order modifying a joint managing conservatorship will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982). The test for abuse of discretion is whether the trial court acted in an arbitrary and unreasonable manner or whether it acted without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. den'd,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ Courts may use the non-exhaustive list of the factors set out in *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976), to determine the child's best interest. *In re Doe 2,* 19 S.W.3d 278, 282 n. 20 (Tex.2000)(recognizing that intermediate courts employ the *Holley* factors to ascertain best interest in conservatorship cases); *In re Z.B.P.,* 109 S.W.3d 772, 778 (Tex.App.-Fort Worth 2003, no pet'n). Those factors include but are not limited to (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams, supra.*

We note that the record contains neither findings of fact nor conclusions of law. Thus, it is implied that the trial court made all necessary findings of fact to support its judgment. *Thompson v. Thompson,* 827 S.W.2d 563, 567 (Tex.App.-Corpus Christi 1992, writ den'd); *In Interest of A.D.H.,* 979 S.W.2d 445, 448 (Tex.App.-Beaumont 1998, no pet'n).

Mancini testified at the hearing that he has lived in Alabama since 1997. He had limited visitation with L.M.M. between 1997 until 2002 because Allen would not allow him to visit. In July 2002, Mancini and Allen entered into an agreement concerning visitation. The trial court entered an agreed order in accordance with the agreement. The record shows that, at that time, Allen and L.M.M. were living in Wyoming with Allen's boyfriend. In April 2003, Allen and L.M.M. moved to Farmington, New Mexico, where they lived with a male friend of Allen. Mancini had an extended visitation with L.M.M. in the summer of 2003. During that time, Allen moved to Dublin, Texas.

Mancini testified that, while L.M.M. was with him during the summer of 2003, Allen interfered with his relationship with L.M.M. Allen called L.M.M. every day; and she would frequently tell L.M.M. that Mancini did not love her, that Mancini stole money and was going to jail, and that she should not call Mancini "Dad." Allen also told L.M.M. that Mancini had "kidnapped" L.M.M. During the summer visitation, Allen became angry that Mancini let L.M.M. go swimming even though she had an ankle injury. Allen called the police and reported the incident.

Mancini also testified that, after the extended summer visitation in 2003, Allen

Section 156.101(1) was amended effective September 1, 2003. The changes to Section 156.101(1) apply to an action to modify an order in a suit affecting the parent-child relationship pending on the effective date of the Act or filed on or after that date.

made visitation difficult. After Mancini had visited with L.M.M. in October 2003, Allen reported to Child Protective Services that Mancini had abused and neglected L.M.M. Child Protective Services conducted an investigation and ruled out the allegations of abuse and neglect. Mancini believed that Allen's actions have hurt his relationship with L.M.M.

Allen testified at the hearing that, during the 2003 summer visitation, Mancini agreed to call on July 4 to determine if L.M.M. would stay the rest of the summer. Mancini did not call on July 4 to extend the visitation. During the visitation, Allen did not speak frequently with L.M.M.; but, when she did speak with her, L.M.M. indicated that she was not having a good time with Mancini. Allen denied telling L.M.M. that her father did not love her and that he had stolen money. Allen acknowledged that she had reported to Child Protective Services that Mancini abused and neglected L.M.M.

We find that the trial court did not err in finding that a material and substantial change had occurred since the rendition of the last order and that modification would be in the best interest of L.M.M.[2] The record shows that L.M.M. had three different residences from 2002 until the time of the hearing and that she had attended three different schools. Prior to 2002, L.M.M. had limited visitation with Mancini. Since that time, Mancini has had frequent and extended visitation with L.M.M., and he has tried to maintain a strong relationship with her. As we have earlier set forth, the record contains evidence that Allen had interfered with the relationship between Mancini and L.M.M. The evidence

supporting the finding of the trial court that a material and substantial change had occurred since the date of the last hearing is not so weak nor is the evidence to the contrary so overwhelming that the trial court's order should be set aside. Allen's first issue on appeal is overruled.

■ In her second issue on appeal, Allen contends that "the evidence does not support the court's finding of alienation and/or interference with the child and father relationship." In its order modifying the parent-child relationship, the trial court stated in its "findings" that:

> The Court finds that the material allegations in the petition to modify are true, there is a substantial and material change in circumstances and that the requested modification is in the best interest of the child. The Court further finds that [Allen] has made extreme attempts to alienate [Mancini] from the child and has caused substantial interference in the relationship between [Mancini] and the child.

The trial court found that there was a material and substantial change and that modification was in the best interest of L.M.M. as required by Section 156.101(1). A part of the evidence before the trial court related to Allen's interference with the relationship between Mancini and L.M.M. We will not review that evidence again here because we have set it out in our discussion of Allen's first issue on appeal. That evidence is not so weak, nor is there any evidence to the contrary that is so overwhelming, that the trial court's order should be set aside. Allen's second issue on appeal is overruled.

2. The July 2002 agreed order did not modify conservatorship. Therefore, the order Mancini sought to modify was the 1997 order which named Allen as the managing conservator with the right to establish the residence of

L.M.M., and it is from the date of that order that we consider the change in circumstances. TEX. FAM. CODE ANN. § 156.101 (Vernon Supp.2004–2005).

In her third issue on appeal, Allen complains that the trial court erred when it admitted a tape recording into evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *E.I. du Pont de Nemours and Company v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995). We will reverse the decision of the trial court only if it acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc., supra* at 241–42.

The tape recording contains conversations that Mancini taped between L.M.M. and Allen. The tape recording also contains messages left by Allen on Mancini's answering machine, and it also contains conversations between Mancini and Allen. Allen contends that, under the "state wiretap law," the recordings were "illegally obtained" and, therefore, not admissible.

Allen cites *Collins v. Collins*, 904 S.W.2d 792 (Tex.App.-Houston [1st Dist.] 1995), *writ den'd*, 923 S.W.2d 569 (Tex.1996), as authority. In *Collins*, the child's father recorded conversations between the child and his mother. The father offered the tape recording into evidence to impeach the mother's testimony. The trial court admitted the tape recording into evidence. On appeal, the court stated that the "state wiretap statute makes it illegal to tape a conversation 'without the consent' of the person being recorded." *Collins v. Collins, supra* at 798.

In *Collins*, the court relied upon TEX. CIV. PRAC. & REM. CODE ANN. ch. 123 (Vernon 2005). Section 123.001 contains various definitions applicable to Chapter 123. Section 123.002 creates a cause of action against a person who violates Chapter 123. Section 123.003 creates certain defenses not applicable here. Section 123.004 provides for an injunction against one who violates Chapter 123. It also provides for damages and attorney's fees. There are no other provisions in Chapter 123.

Chapter 123 basically addresses interception of communications. Section 123.001 contains the following definition:

(2) "Interception" means the aural acquisition of the contents of a communication through the use of an electronic, mechanical, or other device that is made *without the consent of a party to the communication*, but does not include the ordinary use of:

(A) a telephone or telegraph instrument or facility or telephone and telegraph equipment;

(B) a hearing aid designed to correct subnormal hearing to not better than normal;

(C) a radio, television, or other wireless receiver; or

(D) a cable system that relays a public wireless broadcast from a common antenna to a receiver. (Emphasis added)

We decline to follow *Collins* because we are of the opinion that Chapter 123 does not address the admissibility of a tape-recorded conversation at trial and because we believe that, when a party to the communication consents to the interception of the communication, there is no violation of Chapter 123, assuming that it does apply.

Chapter 123 provides a cause of action for a person whose communications have been wrongfully obtained; it does not address the admissibility of that evidence absent an injunction prohibiting the divulgence or use of information obtained by an "interception." *See* Section 123.004(1).

There is another reason why we believe that the tape recording was admissible even if Chapter 123 is applicable. Section 123.001(2) provides that an "interception" occurs when a communication is acquired

without the consent of "a party." The tape recording was made with the consent of Mancini who was a party to some of the conversations on the tape. *Seymour v. Gillespie*, 608 S.W.2d 897 (Tex.1980); *Kotrla v. Kotrla*, 718 S.W.2d 853 (Tex. App.-Corpus Christi 1986, writ ref'd n.r.e.). Mancini also served as joint managing conservator of L.M.M. at the time the conversations were recorded between L.M.M. and Allen. As managing conservator, Mancini had the authority to consent to medical, dental, surgical, psychiatric, and psychological treatment and also to marriage or enlistment in the armed forces of the United States. We find that Mancini also had the authority to consent on behalf of L.M.M. to the tape recording of conversations between L.M.M. and Allen.

Further, even if Chapter 123 is applicable to the admissibility of the tape recording in this case, Allen would have to show that an "interception" occurred. By definition, in order to show that an interception occurred, Allen first would have to show that the tape recording was made without the consent of a party to the communication. Sections 123.001(2) & 123.002. Allen did not meet that burden at trial.

■ Allen makes the same arguments regarding the federal wiretap laws as she does the state wiretap laws. Federal wiretap laws are covered by 18 U.S.C. §§ 2510–2521. Section 2511(2)(d) provides that, if a person is not acting under color of law, it is not unlawful to intercept a communication if one of the parties to the communication has given prior consent to the recording of the communication and the interception is not for the purpose of committing a criminal or tortious act in violation of federal or state constitutions or laws. Although not all federal courts agree that the federal wiretap laws apply to family law cases and although there are not many cases touching upon the subject,

it has been held that a parent may vicariously consent to the tape-recording of a minor child as long as the parent "has a good faith, objectively reasonable basis for believing that it is necessary and in the best interest of the child to consent on behalf of his or her minor child to the" tape recording. *Pollock v. Pollock*, 154 F.3d 601, 610 (6th Cir.1998) (citing *Campbell v. Price*, 2 F.Supp.2d 1186 (E.D.Ark. 1998); *Thompson v. Dulaney*, 838 F.Supp. 1535 (D.Utah 1993)). We hold that, even if the federal wiretap laws are applicable here, Mancini was entitled to consent to the tape recording, both for himself and for L.M.M. as her joint managing conservator, under the criteria set forth in *Pollock*. Because there was consent to the tape recording, federal wiretap laws did not prohibit the introduction of the tape recording in this case.

For all of the above reasons, we hold that the trial court did not abuse its discretion when it admitted the tape recording. Allen's third issue on appeal is overruled.

The judgment of the trial court is affirmed.