NO. 07-06-0143-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 8, 2007

_____

IN THE MATTER OF THE MARRIAGE OF JOHN
WESLEY MCLAIN III AND ELIZABETH BAKER-MCLAIN
AND IN THE INTEREST OF JOHN WESLEY MCLAIN IV,
GENEVA ELIZABETH MCLAIN AND BENJAMIN
MARCUS MCLAIN, CHILDREN
_____

FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY;

NO.  05-244-FC2; HON. TIM L. WRIGHT, PRESIDING
_____

Before QUINN, C.J., CAMPBELL, J. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

In this appeal, Elizabeth Baker-McLain (Elizabeth) challenges a decree terminating

her marriage to John Wesley McLain, III (Wesley).  In doing so, she raises five issues in

which she asserts the trial court erred in:  1) appointing both parties as joint managing

conservators of the three minor children born to the marriage, because there is undisputed

evidence that Wesley has a history of committing family violence; 2) appointing Wesley as

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.  Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2007).

1

primary joint managing conservator of the children contrary to the evidence that she was their primary caregiver; 3) failing to make a fair and equitable division of the community estate in regard to the rights of the parties and the needs of the children; 4) making biased statements against her in regard to her having a mental illness and disregarding Wesley's conflicting testimony; and 5) signing a final divorce decree that did not accurately reflect the judgment rendered. We modify the judgment, and, as modified, affirm it.

## Background

The parties were married on February 12, 2000, in Fairfield, Ohio, where Elizabeth's parents and siblings reside. Several months later, the couple moved to Austin so that Wesley could take a job with Dell. Over the next three years, Elizabeth gave birth to three children, two boys and a girl. She stayed home to care for them. In February 2005, Wesley filed suit for divorce. On September 14, 2006, the trial court entered the divorce decree giving rise to this appeal. In the decree, the court appointed the parties as joint managing conservators of the children with Wesley having the right to designate the children's primary residence.

## Issues 1 and 4 - Family Violence

In her first issue, Elizabeth asserts there was "undisputed evidence of the intentional use of abusive force by Wesley against Elizabeth from September 2000 to February 2005" which rebuts the presumption that the appointment of both parents as joint managing conservators is in the best interest of the children.

The trial court has considerable discretion in determining the best interest of minor children. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re Marriage of Stein*,

2

153 S.W.3d 485, 488 (Tex. App.–Amarillo 2004, no pet.). Even so, the trial court may not appoint joint managing conservators if there is credible evidence of a history or pattern of past or present physical abuse directed by one parent toward the other parent. Tex. Fam. Code Ann. §153.004(b) (Vernon Supp. 2006). There is also a rebuttable presumption that the appointment of a parent as the conservator who has the exclusive right to determine the primary residence of a child is not in the best interest of the child if such abuse exists. *Id.* In making its decision, the trial court should consider any such abuse that has occurred within a two-year period preceding the suit or during the pendency of the suit. *Id.* §153.004(a). If there is such evidence, but the evidence is conflicting and nothing undisputedly shows a history or pattern of violence, it is within the trial court's discretion to resolve the conflict in favor of the person to whom it ultimately makes its award. *Burns v. Burns*, 116 S.W.3d 916, 921 (Tex. App.–Dallas 2003, no pet.); *Lowth v. Lowth*, No. 14-03-0061-CV, 2003 Tex. App. LEXIS 10715 at 14-15 (Tex. App.–Houston [14th Dist.] December 23, 2003, pet. denied).

In this case, at the March 3, 2004 hearing on temporary orders, Elizabeth testified as to two acts of physical abuse that Wesley had committed against her.[2] She averred that one such act occurred when she was pregnant with her first child and Wesley charged toward the front door and knocked the breath out of her. The other occurred when their son was two months old and Wesley threw her to the floor. In response, Wesley denied that he had ever touched her except in self defense. He did, however, admit he had hit

[2]Elizabeth and her sister also testified about an act of violence against the sister that allegedly involved choking the sister after she had pulled the keys out of a vehicle Wesley was driving.

3

"things" and that he had yelled at her. He described one such incident as occurring when Elizabeth was trying to destroy computers he used and said he stepped between her and the computers which caused her to fall. Wesley also testified that Elizabeth would try to block him into corners and, as he walked past, she would scratch him. There was further testimony that in February 2005, Elizabeth called law enforcement officers and said that Wesley had a book on sailboats which also contained a code setting out a method of killing or harming her. On that occasion, an officer determined Elizabeth needed further mental evaluation and she was committed to a mental hospital for several days.

At a subsequent hearing on June 17, 2005, Elizabeth testified to a third act of physical abuse that assertedly occurred in February 2005 when, she said, Wesley threw and hit her with headphones and a television remote. Although this act occurred prior to the initial hearing, she did not mention it at that time. Elizabeth's sister also testified that in September 2000, Wesley pushed Elizabeth which caused her to fall. The record is not clear whether this was the same act about which Elizabeth had testified at the prior hearing.

Although the allegation was not made until sometime between the June 17, 2005 hearing and the final hearing on September 14, 2005, Elizabeth asserted that her daughter informed her that Wesley would touch her "privates." She also said she had noted bruising on her youngest son from his thigh to his knee and she noticed that he had a cut lip. She submitted photographs of her son's bruising as well as photographs of bruises on her daughter's bottom and inner thigh and of a "bruised" lip. These allegations resulted in two reports being made by Elizabeth to Child Protective Services. Wesley denied having

caused any of the bruises on the children and averred that his son had tripped at a park and cut his lip and that his daughter's cut lip did not occur in his care.

A Child Protective Services employee testified that the sexual abuse investigation had been closed because there were no physical findings in the case and the case worker did not get a "solid outcry" from the child. The worker also testified that, although the investigation had not yet been closed, no concrete findings had been made that Wesley had bruised the children or been physically abusive to them. Child Protective Services had determined that both parents fought over visitation with the children and recommended that they both repeat a parenting class.

The trial court found that Elizabeth had "made testimonial allegations of abuse against [Wesley]; however, [Elizabeth] did not present credible evidence to support her allegations, and said allegations were refuted by [Wesley's] testimony." There is sufficient evidence in the record to support this finding.

The record contains allegations of three acts of physical abuse against Elizabeth. However, the record also shows Wesley denied having ever touched Elizabeth except in self defense and denied having thrown a television remote at Elizabeth. Our review of the record also shows that it cannot be said there is undisputed evidence of physical or sexual abuse of the children. It is axiomatic that a trial court is in a better position to evaluate the claims of the parties and to believe or disbelieve their testimony. *Stucki v. Stucki*, 222 S.W.3d 116, 124 (Tex. App.–Tyler 2006, no pet.) As the trier of fact, the trial judge is the determinant of the credibility of the evidence and the weight to be given to it. *Coleman v. Coleman*, 109 S.W.3d 108, 111 (Tex. App.–Austin 2003, no pet.). That being so, this

record does not support a conclusion that the trial judge abused its discretion in appointing the parties as joint managing conservators.

In her fourth issue, Elizabeth additionally complains that the trial court erred in ruling in favor of Wesley by disregarding her evidence about not having a mental illness and disregarding inconsistencies she believes to exist in Wesley's testimony. As we have noted, when there is conflicting evidence, as the fact finder, it is the trial court's duty to resolve conflicts in evidence, and an appellate court may not substitute its decision for that of the trial court. It was also for the trial court to weigh the evidence in the record with regard to Elizabeth's mental health.

In that regard, we note the trial court initially appointed Elizabeth the primary managing conservator of the children even though it had evidence before it of Elizabeth's temporary commitment to a mental health facility, an indication that it did not let that evidence prevent it from finding her fit to care for the children. It was not until a second hearing and evidence that Elizabeth had not been cooperative in allowing Wesley access to the children that the trial court named Wesley as the primary managing conservator. The record does not show an abuse of discretion on the part of the trial court.

## Issue 2 - Primary Care Giver

In her second issue, Elizabeth complains that the trial court failed to accord sufficient weight to her testimony and it erred in appointing Wesley as the primary care giver.

In supporting that proposition, Elizabeth points out that throughout the marriage, she was the parent who stayed home, cared for the children, and "had the stronger emotional ties to the children." In considering her argument, it is axiomatic that the best interest of

the children is the primary consideration in determining the issues of conservatorship and possession of, and access to, the children. Tex. Fam. Code Ann. §153.002 (Vernon 2002). Even though there is evidence that a mother has been the primary care giver of the children, the trial judge is entitled to consider all the evidence, and its failure to appoint the mother as managing conservator does not automatically demonstrate an abuse of discretion. *See Rossen v. Rossen*, 792 S.W.2d 277, 278 (Tex. App.–Houston [1st Dist.] 1990, no pet.) (finding no error in appointing the father as sole managing conservator even though there was evidence the mother had been the primary care giver.)

In its initial temporary order, the trial court appointed Elizabeth as the primary managing conservator of the children. However, at the later hearing on June 17, 2005, the court had before it evidence that Elizabeth had been uncooperative in allowing Wesley access to the children, namely 1) she cut out his midweek visitation after March 2005, 2) she had informed him he was not allowed to take the children from the house during his visitation periods, 3) when he tried to have telephone visitation, she either did not answer the phone or she monitored his telephone conversations with the children, and 4) when he called to make arrangements to take the children to specific events, he was told that Elizabeth and the children were busy until the temporary orders ended. Additionally, the trial court made a specific finding that during the pendency of the matter, "[Elizabeth] has engaged in a course of conduct aimed at alienating the Petitioner [Wesley] and the children from each other." That finding is supported by the evidence. Under the evidence before the trial court, we cannot say that the change in the primary managing conservator was not in the best interest of the children. *See Allen v. Mancini*, 170 S.W.3d 167, 171 (Tex. App.– Eastland 2005, pet. denied) (finding a change in the primary managing conservator was

7

not error when there was evidence the mother had engaged in alienation of the children from the father).

## Issue 3 - Division of the Community Estate

In her third issue, Elizabeth argues there is no evidence to support the trial court's signed division of property because "when an oral judgment is not rendered on community assets . . . , the former spouses become tenants in common with a right of partition." Parenthetically, the trial court's division of property will not be reversed absent an abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). While it is true that when a court fails to divide portions of community property, the ex-spouses become tenants in common, *Harrell v. Harrell*, 692 S.W. 2d 876 (Tex. 1985), Elizabeth fails to specify any particular division of property to which she objects. Rather, she merely objects in a general manner by asserting there was no evidence to support the division. It is established that an appellate brief must contain clear and concise arguments with appropriate citations to authority and the record to support the arguments. When it does not do so, the complaint is inadequately briefed and presents nothing for review. *Mayhew v. Dealey,* 143 S.W.3d 356, 368 (Tex. App.–Dallas 2004, pet. denied). Because Elizabeth has failed to adequately brief this contention, we overrule the issue.

## Issue 5 - Final Judgment

In her last issue, Elizabeth contends that the final judgment signed by the trial court does not comport with its oral pronouncement of judgment. In buttressing that argument, she lists ten instances in which she believes the written judgment fails to do so.

8

In sub-issues A, B, C, and D, Elizabeth asserts errors in the visitation schedule. Responding, Wesley asserts these matters are moot because there is a pending motion to modify the parent/child relationship in which a temporary order modifying visitation has been entered, and he has attached a copy of that order. Yet, an appellate court may not consider documents attached to an appellate brief that are not formally included in the record on appeal. *Burke v. Ins. Auto Auctions Corp.,* 169 S.W.3d 771, 775 (Tex. App.– Dallas 2006, pet. denied). Moreover, the fact that temporary orders modifying the conservatorship provision of the final divorce decree have been entered does not necessarily render an appeal from the divorce decree moot because the party seeking modification bears the burden of proving a change in circumstances. *Bockemehl v. Bockemehl*, 604 S.W.2d 466, 470 (Tex. Civ. App.–Dallas 1980, no writ).

Even so, Elizabeth's basis for claiming error with respect to these matters appears to be a statement made by the trial court that it was "going to approve the current visitation schedule that you two have worked out . . . ." That schedule, which was not reduced to writing, allowed Elizabeth more time with the children than had been allowed by temporary orders. However, any differences in the visitation schedule between the oral rendition and the entry of the final judgment may be considered a modification within the plenary power of the court. *Stallworth v. Stallworth*, 201 S.W.3d 338, 349 (Tex. App.–Dallas 2006, no pet.); *Cook v. Cook*, 888 S.W.2d 130, 131-32 (Tex. App.–Corpus Christi 1994, no writ). Elizabeth does not attack these changes as being an abuse of the trial court's discretion. That being so, we have no basis upon which to find them erroneous.

In her sub-issue E, Elizabeth claims her child support obligation should have commenced on January 1, 2006, instead of October 1, 2005, without further explication. That being so, we find that sub-issue waived because of inadequate briefing.

In her sub-issues F and G, Elizabeth complains that the addresses and phone numbers listed for her and Wesley in the divorce decree are incorrect or are incomplete. However, she has again failed to state a legal basis upon which we can find error on the part of the trial judge.[3]  There is nothing in the appellate record that supports this allegation.

In sub-issue H, Elizabeth contends that the portions of the divorce decree that award cash, individual retirement accounts, pensions, annuities, variable life insurance benefits and life insurance policies should not be included because "the trial court did not determine the rights of both spouses in any pension, retirement plan, annuity, individual retirement account, employee stock option plan, stock option, or other form of savings, bonus, profit-sharing, or other employer plan or financial plan of an employee or a participant."

In supporting that premise, she cites the rule that "when an oral judgment is not rendered on community assets, the former spouses become tenants in common with a right of partition."  However, the rule to which Elizabeth refers is not one which applies to an "oral judgment" but is, rather, applicable to instances in which the trial court has failed to make any division of the property.  *See Busby v. Busby*, 457 S.W.2d 551, 554 (Tex.

---

[3]Wesley does not object to making these changes if we consider them to be anything more than mere grammatical errors.  However, we do not consider this question to be a substantive one requiring action by this court.

1970) (stating the rule that when a divorce decree fails to divide property, the husband and wife become tenants in common as to the community property); *In re Marriage of Notash*, 118 S.W.3d 868, 872 (Tex. App.–Texarkana 2003, no pet.) (stating that when a court fails to divide property at the time of divorce, the ex-spouses become tenants in common). Here, the trial court did make a division of the property in its final decree. Therefore, this complaint is without merit.

In her sub-issue I, Elizabeth argues that her student loans should not be her sole responsibility because the trial court had orally stated: "The debt is 50/50 . . . ." It is not clear from the record whether the trial court's 50/50 reference was only to the community debts or whether it referred to such a division of all the debts. Even so, however, there was testimony in the record by Wesley that Elizabeth had come into the marriage owing student debts, and Elizabeth has not disputed that fact. That being so, the trial court would have erred in assigning that obligation to the non-incurring spouse. *Love v. Bailey*-Love, 217 S.W.3d 33, 35 (Tex. App.–Houston [1st Dist.] 2006, no pet.). The record therefore supports the disposition made in the trial court's final written decree.

Finally, in her sub-issue J, Elizabeth avers that the trial court erred in ordering her to execute a certificate of title and power of attorney to transfer a motor vehicle inasmuch as she was never listed as an owner on any of the car titles to vehicles used by the couple. Wesley agrees that this was the case and does not object to the revision. Accordingly, the final decree of divorce is reformed to delete that portion of it shown on page 31 in which the court orders Elizabeth to execute, have acknowledged, and deliver to Wesley a certificate of title and power of attorney to transfer the vehicle.

11

In summary, all of Elizabeth's issues are overruled with the exception of that pertaining to the motor vehicle and, as reformed, the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice