**Opinion filed May 13, 2010**



## In The

# Eleventh Court of Appeals

_____

### No. 11-08-00276-CV

_____

## IN THE INTEREST OF M.F., C.B.F., & E.F., CHILDREN

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV 05-09-419**

### M E M O R A N D U M   O P I N I O N

James Earl Foster and Shonda Lean Foster[1] appeal from the trial court's order terminating their parental rights to their three children M.F., C.B.F., and E.F.  We affirm.

On September 16, 2005, the Texas Department of Family and Protective Services filed its original petition for protection of a child.  The trial court entered an order naming the Department as sole managing conservator of the children.  The children were placed with their paternal great aunt and uncle, David and Barbara Wiedebusch.  After a mediated settlement, the trial court entered an agreed final order on October 30, 2006, in which it named the Wiedebusches as the permanent managing conservators of the three children.  The agreed order named James Foster and Shonda Foster as possessory conservators of the children and established a detailed visitation schedule.  On October 2, 2007, the Wiedebusches relinquished

---

[1]Shonda Foster is also referred to as Shanda Foster in the record.

custody of the children to the Department after conflicts arose between the Wiedebusches and James and Shonda Foster. The Department was again named managing conservators of the children. The Department filed a petition to terminate the parental rights of James and Shonda Foster. After a jury trial, the trial court entered an order terminating the parental rights of James and Shonda Foster to M.F., C.B.F., and E.F. It is from this order that the parties appeal.

James brings three issues on appeal, and Shonda brings four issues on appeal. Both James and Shonda argue that the trial court erred in ruling that the Department had standing to proceed after the mediated settlement agreement. TEX. FAM. CODE ANN. § 102.003(a)(5) (Vernon Supp. 2009) states that a governmental agency has standing to file an original suit affecting the parent-child relationship at any time. Further, TEX. FAM. CODE ANN. § 262.001(a) (Vernon 2008) states that a governmental entity "may file a suit affecting the parent-child relationship requesting an order or take possession of a child without a court order as provided by this chapter." The mediated settlement agreement did not deny the Department standing, and the trial court did not err when it found that the Department had standing to file suit. We overrule both James's and Shonda's third issues on appeal.

James and Shonda both argue that the trial court erred in allowing testimony concerning conduct that occurred prior to the mediated settlement agreement. James and Shonda contend that, after the mediated settlement and agreed final order, the Department was no longer a party to the action. James and Shonda further argue that res judicata prevents the Department from offering evidence of misconduct that occurred prior to the agreed final order. TEX. FAM. CODE ANN. § 161.004 (Vernon 2008) is instructive:

> (a) The court may terminate the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship if:
>
> (1) the petition under this section is filed after the date the order denying termination was rendered;
>
> (2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;
>
> (3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and
>
> (4) termination is in the best interest of the child.

2

(b) At a hearing under this section, the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child.

Although there was not a previous order denying termination of James's and Shonda's parental rights, there was an agreed final order in response to a petition to terminate their parental rights. The Department filed a subsequent petition to terminate James's and Shonda's parental rights after the agreed final order. The circumstances of the children had materially changed as the managing conservators of the children, the Wiedebusches, had relinquished custody of the children based upon conflicts with James and Shonda. Section 161.004 allows the trial court to consider evidence presented in a previous hearing in a suit for termination, and we follow that reasoning and find that the trial court could consider evidence of conduct prior to the agreed final order. We overrule both James's and Shonda's second issues on appeal.

In his first issue on appeal, James argues that the evidence is factually insufficient to support the jury's finding of termination. In her first issue on appeal, Shonda argues that the evidence is legally insufficient to support the jury's finding of termination.

Due process requires that the grounds for termination be established by clear and convincing evidence. This requires that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (Vernon 2008); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 31 (Tex. 1994). When conducting a legal sufficiency review, we review the entire record in the light most favorable to the finding and determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *In re J.P.H.*, 196 S.W.3d 289, 292 (Tex. App.—Eastland 2006, no pet.). We must assume that the factfinder resolved disputed facts in favor of its finding. *Phillips v. Tex. Dep't of Protective & Regulatory Servs.*, 149 S.W.3d 814, 817 (Tex. App.—Eastland 2004, no pet.). We must also disregard all evidence that a reasonable factfinder could have disbelieved or found incredible, but we cannot disregard undisputed facts. *In re J.F.C.*, 96 S.W.3d at 266.

When conducting a factual sufficiency review, we review the entire record, including evidence in support of and contrary to the judgment, and give due consideration to evidence the trial court could have found to be clear and convincing. *In re C.H.*, 89 S.W.3d 17, 25 (Tex.

3

2002); *In re J.P.H.*, 196 S.W.3d at 292-93. We then determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re C.H.*, 89 S.W.3d at 25; *In re J.P.H.*, 196 S.W.3d at 292. We also consider whether any disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266.

The Department sought termination under provisions set out in TEX. FAM. CODE ANN. § 161.001(1) (Vernon Supp. 2009) including:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> (F) failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition; [or]
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

There must also be a finding that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (Vernon Supp. 2009).

"Endanger" means more than a threat of metaphysical injury or a less than ideal environment, but the conduct need not actually injure the child, nor is it necessary that the conduct be directed at the child. "Endanger" "means to expose to loss or injury; to jeopardize." *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *Phillips*, 149 S.W.3d at 817. The Department need not establish the specific danger to the child's well-being as an independent proposition; the danger may be inferred from parental misconduct. *Phillips*, 149 S.W.3d at 817; *In re J.J. & K.J.*, 911 S.W.2d 437, 440 (Tex. App.—Texarkana 1995, writ den'd).

The Department received numerous reports of abuse and neglect in the home of James and Shonda beginning in 1997. In 2004, the trial court issued a protective order in which it ordered that James not commit domestic violence against Shonda and that James not have

contact with Shonda. Shonda had previously filed an application for a protective order in 2002. James testified at the termination hearing that he and Shonda had physical altercations in front of the children. The police were called to the home numerous times as a result of domestic violence. M.F. called the police to come to the house on one occasion. James testified that he and Shonda engaged in conduct that endangered the well-being of the children.

A Department investigation in 2005 revealed serious ongoing domestic violence in the home. The Department received a priority referral for M.F., C.B.F., and E.F. on September 2, 2005, for the alleged physical abuse of C.B.F. by James and Shonda. C.B.F. had a bruise and knot on the middle of her forehead, and she said James caused the injury. C.B.F. later said she did not know how she got the knot and bruise. M.F. and C.B.F. told school officials about numerous incidents of domestic violence.

After their removal from James and Shonda, M.F. and C.B.F. received counseling services from Lynn Sharpin. Sharpin testified that M.F. and C.B.F. were initially hostile and physically aggressive. M.F. and C.B.F. were "calming down" and "stabilizing in their adjustment" after six months in the Wiedebusches' home, but when visitation started with James and Shonda, they regressed. M.F. and C.B.F. told Sharpin that James and Shonda fought a lot and that Shonda took drugs. M.F. and C.B.F. drew pictures that showed James throwing Shonda to the floor, James choking Shonda, and James bending Shonda's hand backwards. M.F. and C.B.F. told Sharpin that they did not feel safe returning to James and Shonda.

Shonda testified at the termination hearing that she was arrested after an altercation in the home in which she became angry and threw a knife. Shonda was also arrested as a result of a confrontation during an exchange of the children with the Wiedebusches. Shonda stated that she developed a problem with painkillers in 1999 and started using methamphetamine in 2005. Shonda testified that she was arrested on June 14, 2008, and again on July 5, 2008, for possession of a controlled substance. Shonda submitted to a hair follicle drug test on March 30, 2007, that was positive for a controlled substance, but a test on April 24, 2007, was negative. Shonda was indicted in 2008 for stealing lottery tickets from her employer. Shonda was also indicted in 2008 for engaging in organized criminal activity involving the purchase of substances to manufacture methamphetamine.

We find that the evidence is legally and factually sufficient to support the jury's findings on termination. James and Shonda both have an extensive history with the Department. The record shows that James and Shonda both have engaged in domestic violence that has

5

endangered the physical or emotional well-being of the children. Evidence that a parent has engaged in abusive or neglectful conduct in the past permits an inference that the parent will continue this behavior in the future. *In re D.L.N.*, 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied). Shonda continues to struggle with substance abuse and has been arrested for drug-related offenses. We overrule James's and Shonda's first issues on appeal.

In her fourth issue on appeal, Shonda argues that the trial court abused its discretion in allowing drug test results into evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Allen v. Mancini*, 170 S.W.3d 167, 172 (Tex. App.—Eastland 2005, pet. den'd). We will reverse the decision of the trial court only if it acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Allen*, 170 S.W.3d at 172.

On direct examination, Shonda testified that she had been "clean" since April 1, 2006. The State asked Shonda, "Since September of 2005 to the present, how many times have you taken and failed a drug test in which you tested positive for methamphetamine?" Shonda responded without objection, "Once. I then turned around with my own money --." The State then asked, "How many times have you taken a test and the test showed positive?" Shonda responded again without objection, "Once." The State asked, "I know you say you didn't take it --." Shonda's attorney then objected as to hearsay, and the trial court instructed the State to rephrase the question. The State asked Shonda, "[H]ow many times have you actually taken a drug test and it showed positive for methamphetamine?" Shonda's attorney objected that no predicate had been laid, and the trial court sustained the objection. After further exchange, Shonda again testified without objection that she had not passed all of the drug tests she had taken. When asked specifically how many drug tests Shonda had "failed," the trial court sustained her attorney's objection and allowed the State to rephrase. The State asked, "Out of all of the drug tests that you have taken, how many times have you received a written piece of paper saying that you failed?" The trial court overruled the objection, and Shonda stated that she was "not sure." Upon further questioning by the State without objection, Shonda stated that she had failed more than two drug tests and possibly more than four.

Shonda initially testified without objection that she had tested positive for methamphetamine. Therefore, Shonda failed to timely object to the admission of the drug test results. TEX. R. APP. P. 33.1(a). A party must continue to object each time inadmissible

evidence is offered. TEX. R. EVID. 103(a)(1). After stating her objections to the evidence, Shonda later testified without objection that she had failed at least two drug tests. Moreover, Dr. Bill Gustavus testified at the termination hearing without objection that Shonda tested positive for methamphetamines four or five times. The general rule is that error in the admission of evidence is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004); *Clayton v. Wisener*, 190 S.W.3d 685, 699 (Tex. App.—Tyler 2005, no pet.).

Amanda Snow, supervisor at One Source Health Center and custodian of records, testified that she performs and oversees drug screens. One Source collects the specimen, but does not perform the test analysis. One Source receives a report from the lab with the analysis of the drug test. The report from Shonda's drug test was admitted over objection.

To be entitled to reversal due to the erroneous admission of evidence, an appellant must not only show that the trial court erred in admitting the evidence but that the error was reasonably calculated to cause and probably did cause the rendition of an improper verdict. TEX. R. APP. P. 44.1; *In re C.R.*, 263 S.W.3d 368, 370 (Tex. App.—Dallas 2008, no pet.). We review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted. *In re C.R.*, 263 S.W.3d at 370. The jury heard considerable evidence of Shonda's drug use and her arrests for drug use. Any error in admitting the drug test reports was harmless. Rule 44.1; *In re C.R.*, 263 S.W.3d at 370. We overrule Shonda's fourth issue on appeal.

The judgment of the trial court is affirmed.

JIM R. WRIGHT
CHIEF JUSTICE

May 13, 2010

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

7