**Opinion filed January 9, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00288-CV

_____

## IN THE INTEREST OF E.G.S., A CHILD

**On Appeal from County Court at Law No. 1**
**Brazos County, Texas**
**Trial Court Cause No. 11-000282-CV-CCL1**

### M E M O R A N D U M   O P I N I O N

In accordance with the verdict of the jury, the trial court entered an order in which it appointed Stephanie Stiegler Neill as the joint managing conservator who had the exclusive right to designate the primary residence of E.G.S. We affirm.

When E.G.S. was approximately eight months old, her parents were killed in a traffic accident. After she spent a period of time in the hospital, E.G.S., who was also injured in the collision, went to live with Edward Scott Neill and Stephanie Stiegler Neill, who are her paternal uncle and aunt. When the Neills later filed this lawsuit to be appointed E.G.S.'s joint managing conservators, E.G.S.'s maternal

grandparents, David and Sandra Goodpasture, countersued and asked to be appointed joint managing conservators with the exclusive right to establish E.G.S.'s primary residence. The parties agreed to the joint managing conservatorship arrangement, but could not agree upon the issue of who would have the exclusive right to establish E.G.S.'s primary residence.

After the jury heard the evidence, it found that Stephanie Neill should be designated as the managing conservator who had the exclusive right to designate E.G.S.'s primary residence. The trial court entered its judgment in accordance with the verdict of the jury, and this appeal followed.

During pretrial discovery, the Goodpastures sought to require that the Neills produce their federal and state income tax returns since 2009, documents showing fringe benefits earned or received since January 2010, investment account statements since January 2009, bank account statements since January 2010, and credit card statement since January 2010. The Neills refused to furnish the documents, and the trial court denied the Goodpastures' motion to compel and reasoned that such production would be more appropriate in a then-pending guardianship action that involved E.G.S. After the trial court's ruling, the parties apparently entered into a Rule 11 agreement to the effect that the documents need not be produced in this case. *See* TEX. R. CIV. P. 11. The guardianship proceeding was later dismissed.

The Goodpastures filed a second motion to compel. In that motion, the Goodpastures argued that the requested documents "relate[d] to the finances of [the Neills] and are relevant to the issue of what resources [the Neills] have to provide for the care of the child and any motivation [the Neills] have to access the estate of the child." They further argue that the "relative abilities of the parties to provide for the child, financially and otherwise, were clearly relevant factors to be considered in determining the best interest of the child."

2

At some point, the trial court examined some of the requested documents in camera, but because they were not made a part of the record, we do not have the benefit of those documents. In this appeal, the Goodpastures assert but one issue: the trial court erred when it ruled against them on the discovery issue.

The Neills objected to producing their tax returns and information related to their investments and credit card debt "because the proposed discovery is not relevant to the subject matter of the suit and will not lead to the discovery of admissible evidence" and because the "proposed discovery goes beyond the subject matter(s) of the case and reasonable expectations of obtaining information that will aid resolution of the dispute." The Neills argue on appeal that the "stability factor [in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976)] refers to the stability of the home of the proposed placement, not financial matters," and that "considering financial ability as a factor of stability of the home, the jury in this case did consider this evidence."

The best interest of the child is always the overriding principle in any suit affecting the parent-child relationship. TEX. FAM. CODE ANN. § 153.002 (West 2008); *Allen v. Mancini*, 170 S.W.3d 167 (Tex. App.—Eastland 2005, pet. denied). While no unique set of factors need be proved, the Texas Supreme Court has identified a non-exhaustive list of factors that trial courts should consider in making a best-interest determination.[1] *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (listing factors like stability of the home or proposed placement, parental abilities of the individuals seeking custody, and acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper

---

[1]We note, however, that unlike *Holley*, this case does not involve the redetermination of a conservatorship issue. Here, there had been no adjudication of the primary residence issue; therefore, both the Neills and the Goodpastures bore the burden of proof as to their respective claims to hold the exclusive right to establish E.G.S.'s primary residence. *See Cisneros v. Dingbaum*, 224 S.W.3d 245, 258 (Tex. App.—El Paso 2005, no pet.).

one); *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied); *see also* FAM. § 153.134.

The record from trial shows that the Goodpastures' combined annual income exceeds $120,000; David's annual salary is about $87,500, and Sandra's is approximately $36,000. Stephanie Neill earns an annual salary of $102,000, and after savings, taxes, and paying $1,600 each month in health insurance premiums, she brings home approximately $6,400 each month. In addition to Stephanie's income, the Neills receive $1,400 each month for E.G.S.'s social security survivor benefits. A "Financial Information Statement" that was admitted at trial reflects an itemized list of the Neills' monthly expenses and debts, which totaled $4,648.96 each month. The detailed list includes, among other items, their house and car payments, groceries, HOA fees, property taxes, credit cards, and haircuts. In addition, there is a copy of a W-2 showing that Stephanie earned $102,072.69 in 2011, which corroborates the income listed on the financial statement.

Even if the Goodpastures did not waive the issue when they entered the Rule 11 agreement and even if the matter was not waived by a failure to include in the record the documents that the trial court reviewed in camera, the Goodpastures have not shown that any discovery error constituted reversible error. *See* TEX. R. APP. P. 44.1(a); *see also Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009) ("If the trial court abuses its discretion in a discovery ruling, the complaining party must still show harm on appeal to obtain a reversal."). The Goodpastures collected most of the financial information that they sought to discover and, on appeal, fail to explain what the additional information would have shown. The Goodpastures fail to explain how additional income reflected on a tax return, the amount of cash in the Neills' bank accounts, or additional income from investments would show that the Neills lack the resources to care for the child or that their motivation is to access E.G.S.'s parents' estate. Evidence of additional

income or cash reserves would merely show that the Neills have additional resources and that the Neills are less likely to have motive to access the estate for reasons other than caring for the child. While the amount of total credit card debt may be relevant in some circumstances, there was evidence admitted at trial that the Neills pay $300 each month toward credit cards. In light of the evidence admitted at trial and the record before us, we conclude that any error in denying discovery of the requested financial documents was harmless. The Goodpastures' single issue on appeal is overruled.

We affirm the order of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


January 9, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.